David T. Gibbons, J.
This is an application made immediately prior to trial pursuant to section 813-c et seq. of the Code of Criminal Procedure for an order to suppress certain items of physical property from evidence upon the trial of an indictment charging the defendants with the crimes of robbery, grand larceny, assault, and possession of a dangerous weapon as a misdemeanor. (Mapp v. Ohio, 367 U. S. 643.)
Following a hearing on this motion, the court makes the following findings of fact and conclusions of law.
In the evening of April 2, 1967, while Richard Chamberlain, assistant night manager of the Hollywood Roosevelt Hotel in Hollywood, California, was in charge of registrations, two individuals, giving the names Frank Rago and John Kelly came to the main desk and were registered by him as guests of the hotel. It has since been ascertained that the defendant, Louis Butler, gave the fictitious name, John Kelly, and that the defendant, James Sorise, used the fictitious name, Frank Rago.
*559 At the time when the defendants registered, Mr. Chamberlain told them that the payment for the use of the room must be made in advance and that the daily check-ont time was at 3:00 p.m. The defendants then paid the hotel charge for that night and occupied room No. 914. They paid the charge for the second night on April 3, 1967. The hotel records confirm Mr. Chamberlain’s testimony that this was an advance payment transaction, requiring'payment prior to each night’s occupancy.
Under this arrangement, the room charge was paid up to 3:00 p.m. on April 4, 1967. Sometime after the 3:00 p.m. check-out time on April 4, 1967, not having received advance payment for the use of the room, Lester Fouke, assistant manager of the hotel, went to investigate at room 914. He opened the door, glanced in and observed that nobody was present but that luggage was still in the room. He double-locked the room and left. The process of double-locking the door involved the locking of a second lock installed in the door with a key different from the regular guest’s key, and which is retained in the exclusive possession of the hotel management. The effect of such double-locking operation was to prevent re-entry by the guests with the regular key issued to them, and which would consequently require them to personally go to the manager for admittance to the room. By such double-locking procedure, the hotel effectively took possession of the room to the exclusion of the guests who were then in arrears for failure to make the required advance payment.
Having heard nothing from the occupants of room 914, in the afternoon of the following day, April 5,1967, Mr. Fouke and another employee of the hotel entered the room between 3:30 p.m. and 4:00 p.m. to find out who the guests were and what to do about the luggage. Again, nobody was present in the room. There was an attache case in one of the dresser drawers. He removed it and opened it up on the bed. He then discovered that it contained packets of paper money in paper bank wrappers. He closed the attache case, double-locked the room again, and put in a call to the police shortly before 11:00 p.m. that night. It is noted that Fouke terminated the defendants ’ right to occupy the room for failure to renew the rental before he made any inspection of the defendants ’ belongings.
Detectives Boyal MacGregor and H. J. Knieriem of the Los Angeles Police Department, Hollywood Detective Division, responded to such call and met Mr. Fouke at the hotel. He led the detectives to room 914, opened the door and requested them to enter. They observed the bedroom part of the hotel accommodations. There was no one present. Mr. Fouke called their attention to an open attache case in which there were revealed, *560 in open view, several packets of paper money in bank wrappers, rolls of coins in wrappers, and loose coins. Some of the paper wrappers had handwritten notes on them.
While in the room, Mr. Fouke told the detectives that he did not know the whereabouts of the former guests, and he furnished them with their names and addresses from the hotel records.
The detectives then proceeded to search the room for other property and to conduct a preliminary examination to determine the ownership of the property in the room which in addition to the attache case and its contents, also contained two other pieces of luggage. The bathroom medicine chest contained a can of Gillette foamy shave cream, a tube of toothpaste and a bottle of aftershave lotion.
At about 11:40 p.m. Detective James Clayborn, a fingerprint expert of the Los Angeles police, arrived in the hotel room and in the presence of the other detectives, he lifted fingerprints from the three last-mentioned items by the use of Scotch tape and placed them on paper cards which are also the subject matter of this motion.
All of the items of property in the room, including the currency, were listed by the detectives and delivered into the custody of the Police Property Clerk of the Los Angeles Police Department.
At no time prior to the entry into the hotel room and the removal of the defendants’ personal effects therefrom, were the Los Angeles police authorities or the hotel personnel aware of the commission of the crimes which form the basis of this indictment, nor was any search warrant ever issued in relation to said premises. The police went to the hotel and entered room 914 at the instance of the assistant manager of the hotel and without being advised in advance concerning the commission of any crime by the defendants.
The defendants, both admitted narcotic addicts, testified that on April 3, 1967, they went to Tijuana, Mexico, for the purpose of purchasing heroin, arriving there between noon and 1:00 p.m. On their return to the United States, they were apprehended at the international border by United States customs agents between 1 -.00 p.m. and 3:00 p.m. and there arrested upon a charge of illegal possession of narcotics.
They also testified that while in the custody of the two Federal agents, they requested them to obtain their luggage and personal effects from the hotel. They said that these officers took the hotel receipts from them, and therefore knew that they had been guests at the Hollywood Roosevelt Hotel. They claim that they *561 made a similar request at the arraignment which followed their arrest.
The defendants never returned to the hotel after they were arrested by the customs agents on April 3, 1967. They never communicated with the management of the hotel by telephone or in writing with reference to their luggage and personal effects, nor is there any proof that any member of the hotel staff ever received such notification.
Upon all of the evidence, the court finds that, when room 914 was engaged by the defendants it was upon the express understanding that payment for its use was to be made in advance, and that the daily check-out time was, as stated to them, to be at 3:00 p.m.
The court further finds that the defendants made advance payments for two nights, as reflected by the hotel records in evidence, and that their right to the room ended at 3:00 p.m. on April 4, 1967.
The defendants have offered no proof whatever to establish the existence of a room-hiring agreement upon a credit or any different basis other than that hereinabove found by the court.
Although the constitutional prohibition against unreasonable searches and seizures was intended to prevent “ unreasonable governmental intrusion into the privacy of a person’s home ” (Silverman v. United States, 365 U. S. 505, 511; Jones v. United States, 357 U. S. 493, 498), and whereas a hotel room enjoys equal constitutional protection with the same dignity as a home (Johnson v. United States, 333 U. S. 10; United States v. Jeffers, 342 U. S. 48), upon all the facts and circumstances of this case, there has been no invasion of the defendants’ constitutional rights.
The defendants’ right to the privacy of room 914 subsisted for as long as they retained the legal right to its possession. The parties by their agreement, made at the time of the hiring of the accommodations, delineated the extent and duration of such right. When an advance payment was not forthcoming from the defendants after check-out time at 3:00 p.m. on April 4, 1967, their possessory rights in the room expired.
At that time the hotel management had the immediate right to enter the room, remove the defendants ’ effects and make the room ready for its next guest.
In People v. Van Eyk (56 Cal. 2d 471, 478 [1961], cert. den. 369 U. S. 824), under similar circumstances, the Supreme Court of California held: “ The record is sufficient to show that the hotel room in which the narcotics were found on September 15 *562 was no longer defendant’s room. He rented it on September 13, paying for one day only, and the receipt giving him described the duration of his tenancy as ‘ from September 13 to September 14.’ The owner of the hotel testified that, had the opportunity arisen, the room would have been rented to another as of September 14. Defendant’s tenancy could be found to have expired before the search was made, and the manager of the hotel was entitled to permit the police to enter and search the room.” (See, also, United States v. Cowan, 396 F. 2d 83.)
When the hotel manager first opened the door of room 914 after check-out time on April 4, 1967, and observed the luggage within, it was merely to inquire why the room was being occupied without payment.
After an expiration of more than a day the hotel manager again entered the room after 4:00 p.m. on April 5, 1967 to ascertain from the contents of the luggage the possible whereabouts of its missing guests.
When the police authorities were summoned to the hotel by the manager after 11:00 p.m. on April 5, 1967, it was for the express purpose and with the intention of initiating the resources of the police to locate such missing persons, and further to deliver over to police custody the personal effects of their missing guests, while the hotel management went about its business of making the room ready for future guests. It was not incumbent upon the hotel to suffer the defendants’ effects to remain there indefinitely.
The search of the room and the defendants ’ luggage, which was exposed to open view by the manager, and the taking of fingerprints by the Los Angeles police authorities after 11:00 p.m. on April 5,1967, were with the express permission and invitation of the hotel management.
The principles of People v. Mullgrav (25 A D 2d 784), urged by the defendants, has no application here for the reason that, in that case a motion to suppress was granted where the defendant still retained a possessory right to the room when the landlady opened the door “ for the officer ”, whereas here the defendants no longer had such right in the hotel room when the police were invited in by the manager and examined the contents of the attaché case which he had exposed to open view. At no time did the police request or direct the hotel personnel to open the door or to search the room or its contents. The request to do so was made by the management for the purpose of ascertaining the whereabouts of the missing former occupants of the hotel room.
The determination of the case at bar is governed by the applicable rule of Gandy v. Watkins (237 F. Supp. 266, 270, cert. den. *563 380 U. S. 946), where the United States District Court in Alabama under like circumstances held: “ This Court fully recognizes that the Fourth Amendment to the Constitution of the United States protects an individual from unreasonable searches and seizures; however, under the circumstances in this case where the property was taken into custody by the officer at the specific request of the hotel manager and where the search was initially made by the owner of the hotel, and the property was only pointed out to the officer by the owner and manager of the hotel and then taken into custody by the officer at the request of the owner and manager of the hotel, there had been no unreasonable search and seizure within the meaning of the Fourth Amendment to the Constitution of the United States. ’ ’
The defendants have failed to sustain their burden to establish by a preponderance of the credible evidence that the items which, by this motion they seek to suppress, were obtained by an illegal search and seizure by the Los Angeles police in violation of their rights under the Fourth Amendment of the Constitution of the United States. (People v. Entrialgo, 19 A D 2d 509, affd. 14 N Y 2d 733; People v. Merola, 30 A D 2d 693; People v. Newberns, 25 A D 2d 528.)
The defendants ’ motion to suppress must therefore be denied. Accordingly, it is ordered that defendants’ motion to suppress is hereby denied, and the items of physical evidence received in evidence on this hearing may be used as evidence upon the trial of this indictment.