■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SANDY L. STADTMORE, Appellant.—Appeal by defendant from a judgment of the County Court, Nassau County, rendered September 30, 1975, convicting him of attempted criminal possession of a controlled substance in the sixth degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review an order of the same court, entered July 10, 1975, which, after a hearing, denied the branch of defendant's motion which sought to suppress certain physical evidence. Judgment and order reversed, on the law, motion insofar as it sought to suppress physical evidence, granted and indictment dismissed. The fact findings upon which the order under review is based are not in dispute. The testimony at the suppression hearing reveals the following basic and uncontroverted facts. As the result of defendant's nonpayment of rent, his landlord instituted a summary proceeding which culminated, on September 9, 1974, in the issuance, by the City Court of Long Beach, of a warrant to evict. The defendant received the required 72-hour notice provided for by statute (Real Property Actions and Proceedings Law, § 749, subd 2) and, on September 16, 1974, the date on which the warrant was to be executed, he telephoned the city marshal to inform him that he would be ready to leave when the marshal arrived. The marshal, aware of defendant's prior criminal history, anticipated a less than orderly proceeding and, accordingly, requested police assistance. When the city marshal, accompanied by two detectives and the building superintendent, thereafter arrived at defendant's apartment, the defendant was almost finished packing and informed the marshal that he would be ready to leave in a few minutes. As the defendant was completing his packing and moving the already packed boxes into the hallway, the two police officers, while they did not look into the packed boxes, otherwise thoroughly searched the apartment. While bending down to look under the stove, one of the officers found two bottles, each containing a liquid, and labeled, respectively, "liquid

---

demerol" and "liquid morphine", underneath the broiler. Defendant was then placed under arrest. Defendant simply contends that this warrantless search was in derogation of his Fourth Amendment rights. The District Attorney's response is essentially threefold: (1) the relationship of landlord and tenant terminated upon the issuance of the warrant to evict; (2) even if the defendant had a possessory interest in the apartment on September 16, 1974, he had no reasonable expectation of privacy for the simple reason that he knew the city marshal would be evicting him; and (3), in any event, the two police officers had a right to be in the apartment and the two bottles were in plain view. It is the rule that "a search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of 'exigent circumstances'" *(Coolidge v New Hampshire,* 403 US 443, 474–475, rehearing denied 404 US 874). It is readily apparent that there were no exigent circumstances present in the instant case. It is similarly well established that a landlord does not possess the authority to consent to the search of a tenant's apartment *(Chapman v United States,* 365 US 610). However, respondent, citing the express language of subdivision 3 of section 749 of the Real Property Actions and Proceedings Law, contends that the landlord-tenant relationship terminates upon the issuance of a warrant to evict. The landlord would, at that point, presumably have the full authority to consent to a search of the apartment, notwithstanding the fact that the tenant had not yet received the required statutory notice. In response to this it should be noted, first, that while the issuance of the warrant technically terminates the landlord-tenant relationship, the summary proceeding remains open, and, hence, the relationship is subject to revival, until the actual execution of the warrant (Real Property Actions and Proceedings Law, § 749, subd 3; *Novick v Hall,* 70 Misc 2d 641; *300 West Realty Co. v Wood,* 69 Misc 2d 580, affd 69 Misc 2d 582). Moreover, the provision terminating the landlord-tenant relationship was simply intended to protect the tenant from further liability for rent (see *Matter of Joseph v Cheeseboro,* 42 Misc 2d 917, 922, revd on other grounds 43 Misc 2d 702). Second, "'constitutional provisions for the security of person and property should be liberally construed'" *(Coolidge v New Hampshire, supra,* p 454, quoting from *Boyd v United States,* 116 US 616, 635); hence, traditional property law concepts should not be automatically applied in this area (see *Jones v United States,* 362 US 257, 266). A warrant to evict is a process issued in a *civil* proceeding. As such, its mandate is directed to, and is to be executed by, the city marshal or his counterpart (Real Property Actions and Proceedings Law, § 749, subds 1, 2); it is not directed to the police. On the other hand, a search warrant is addressed to a police officer (CPL 690.25, subd 1). Moreover, a search warrant, "particularly describing the place to be searched, and the persons or things to be seized", may only be issued "upon probable cause, supported by Oath or affirmation" (US Const, 4th Amdt). Until the moment of his actual eviction defendant, regardless of his technical status under property law, was lawfully occupying the apartment in question. In our view, respondent seeks to convert civil process into a warrant for a general search. In short, the single fact of nonpayment of rent should not result in the forfeiture of one's Fourth Amendment rights. Turning to the District Attorney's remaining contentions, we note that a defendant's reasonable expectation of privacy has been considered *a* factor in determining the reasonableness of a warrantless search *(People v Perel,* 34 NY2d 462; *People v Doerbecker,* 48 AD2d 120). In terms of reasonable expectations, we do not believe that a tenant who is

about to be evicted should anticipate that police officers will be present to conduct a general search for contraband on the pretense of insuring the total removal of his belongings, nor does the plain view doctrine have any application to this case for the simple reason that the bottles were *not,* in fact, in plain view. Latham, Acting P. J., Margett, Damiani, Titone and Hawkins, JJ., concur.