THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MICHAEL P. LERHINAN, Appellant.

Second Department, November 22, 1982

APPEARANCES OF COUNSEL

*Matthew Muraskin* (*Madeline Kochen* and *Michael J. Obus* of counsel), for appellant.

*Denis Dillon, District Attorney* (*George Freed, Samuel E. Rieff* and *Anthony J. Girese* of counsel), for respondent.

OPINION OF THE COURT

LAZER, J. P.

Because the constitutional validity of hotel and boarding room searches has evoked only limited jurisprudence in this State, this case provides the opportunity to illuminate the relationship between the Fourth Amendment and real property law. The search here challenged turned up the fruits of the crime and resulted in defendant's plea of guilty to burglary in the third degree after his motion to suppress was denied. We conclude that a hotel guest, who has a constitutionally protected right to privacy in his room, loses any reasonable expectation of such privacy when the rental period expires. At that time, the hotel owner may reassert control of the room and validly consent to have the police search it and its contents.

On February 14, 1979, a number of cases of liquor and a tool and die set were stolen from the bar and storeroom located in the Colony Arms Hotel in Glen Cove. The stolen items were subsequently found by the hotel manager when he entered the room defendant had been occupying at the hotel and looked in the closet. At the time of this entry, the defendant was two weeks in arrears on rent which was payable in advance weekly. The manager testified that while the purpose of the entry was rent collection, if the defendant was not in, he had intended to move the man's belongings to the basement, change the lock and rerent the room. Hearing no response to his knock on the door, the manager used a passkey to open it and, in the closet, found the cases of liquor and a tool and die set covered with a bed sheet. Recognizing the items as related to the earlier burglary, the manager promptly called the police. When Detective Van Nostrand arrived, he was informed that the rent had been unpaid for two weeks and the missing property had been discovered in the course of eviction of the defendant. Van Nostrand was then led to the room and shown the stolen goods. The defendant was arrested the next day and subsequently moved to suppress the recovered items. The motion was denied on the ground that he lacked standing to challenge the search.

Whether standing is the issue here (see *People v Hunter,* 55 NY2d 930, 931) or whether the question is "more properly subsumed under substantive Fourth Amendment doctrine" (see *Rakas v Illinois,* 439 US 128, 139) is not significant to our disposition;[1] the defendant can obtain a suppression only if he can demonstrate that he possessed a reasonable expectation of privacy in the hotel room at the time it was searched (see *Rawlings v Kentucky,* 448 US 98, 106; *Rakas v Illinois, supra; People v Ponder,* 54 NY2d 160). The test is whether he exhibited an actual (subjective) expectation of privacy and whether that expectation is one that society is prepared to recognize as reasonable

---

1. Despite historical resort to standing concepts in Fourth Amendment cases (see, e.g., *Brown v United States,* 411 US 223, 229; *Jones v United States,* 362 US 257, 267), including a recent reference to standing by the Court of Appeals (see *People v Hunter,* 55 NY2d 930, 931), the Supreme Court seems to be abandoning separate inquiry into standing and focusing instead on the more substantive issue of the extent of the defendant's rights under the Fourth Amendment (see *Rakas v Illinois,* 439 US 128, 139; *Rawlings v Kentucky,* 448 US 98).

(see *Katz v United States,* 389 US 347, 361 [HARLAN, J., concurring]; see, also, *Rakas v Illinois, supra,* p 143).[2] Although " '[f]reedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment' " (*Payton v New York,* 445 US 573, 587, citing *Dorman v United States,* 435 F2d 385, 389), the individual's privacy interests extend to a variety of settings. Since a guest in a hotel room is entitled to the protection of the Fourth Amendment (*Stoner v California,* 376 US 483; *United States v Jeffers,* 342 US 48; *Johnson v United States,* 333 US 10), a hotel employee may not effectively consent to a search of the room during the rental period (see *Stoner v California, supra; State v Smith,* 178 NW2d 329 [Iowa]).

Although the Supreme Court has repeatedly repudiated the notion that the subtle distinctions developed in property law control Fourth Amendment determinations (see *Rakas v Illinois,* 439 US 128, 143, *supra; United States v Matlock,* 415 US 164, 172; *Chapman v United States,* 365 US 610, 617; *Jones v United States,* 362 US 257, 266), "the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment" (*Rakas v Illinois, supra,* p 144, n 12; see, also, *United States v Salvucci,* 448 US 83). As noted by Justice REHNQUIST: "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others,

---

**2.** The portion of the test requiring an actual expectation of privacy has been criticized "on Orwellian grounds, that is, that it would be possible for the government by edict or by known systematic practice to condition the expectations of the populace in such a way that no one would have any real hope of privacy" (*United States v Taborda,* 635 F2d 131, 137; see *United States v Kim,* 415 F Supp 1252; Amsterdam, Perspectives on the Fourth Amendment, 58 Minn L Rev 349, 384; 1 LaFave, Search & Seizure, § 2.1, pp 229-230). Nonetheless, the Supreme Court has recently reiterated the test while cautioning that "[s]ituations can be imagined, of course, in which *Katz'* two-pronged inquiry would provide an inadequate index of Fourth Amendment protection" (*Smith v Maryland,* 442 US 735, 740, n 5). Although the instant defendant did not testify, it is apparent that he expected his room to remain private, regardless of his arrearage in rent. The case turns, however, on the reasonableness of that expectation.

see W. Blackstone, Commentaries, Book 2, ch. 1, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." (*Rakas v Illinois, supra,* p 144, n 12.)

Analysis of the current issues first requires examination of the nature of defendant's interest in the premises searched to determine whether a legitimate expectation of privacy existed at the time of the search (see *United States v Haddad,* 558 F2d 968, 975; *United States v Jamerson,* 549 F2d 1263). Under New York law, there is an express or implied understanding between guest and hotel owner that the former shall be the sole occupant during the time that is set apart for his use (see *People v Gallmon,* 19 NY2d 389; *de Wolf v Ford,* 193 NY 397). The owner retains a right of access only for such reasonable purposes as may be necessary in the conduct of the hotel, not only to take action in the event of a fire or gas leakage (*People v Gallmon, supra; de Wolf v Ford, supra*), but obviously to take routine care of necessary housekeeping as well. But since no conventional landlord-tenant relationship is involved in the ordinary rental of hotel rooms (*Ashton v Margolies,* 72 Misc 70; *Wilson v Martin,* 1 Denio 602; cf. *Smith v Rector, Wardens & Vestrymen of St. Philip's Church,* 107 NY 610, 619),[3] a hotel owner may dispossess an occupant without resort to the use of summary proceedings (*Morningstar v Lafayette Hotel Co.,* 211 NY 465; *Jacob v Jacob,* 125 Misc 649; 2 Rasch, New York Landlord & Tenant, Summary Proceedings [2d ed], § 1189; 27 NY Jur, Hotels, Restaurants & Motels, § 40). Under section 181 of the Lien Law, the owner also has the right to seize the defaulting guest's property and sell it at public auction.[4] This contrasts with

---

**3.** A notable exception is that part of RPAPL 711 (as amd by L 1982, ch 739) which prohibits the removal of rooming house tenants who have been in occupancy for 30 consecutive days or more, except by means of summary proceedings. The intent of this section is to protect permarent rooming house residents, and not hotel tenants or transient rooming house residents (see *Bolotnikov v Katz,* 95 Misc 2d 377; NY Legis Ann, 1956, pp 242, 244).

**4.** Although the ex parte sale of the property was declared unconstitutional in *Blye v Globe-Wernicke Realty Co.* (33 NY2d 15, 20), the inkeeper's right to seize and sell the property was not questioned, so long as the guest was afforded notice and the opportunity to be heard prior to permanent deprivation of the property (see, also, *Sharrock v Dell Buick-Cadillac,* 45 NY2d 152).

the rental of an apartment, the possession of which may not be disturbed until a warrant of eviction has been executed (RPAPL 749, subd 3; *People v Stadtmore,* 52 AD2d 853).

The distinction between the privacy expectation of a hotel guest and a tenant of an apartment building has been recognized in a number of other jurisdictions (see, e.g., *United States v Croft,* 429 F2d 884 [Kan law]; *State v Carrillo,* 26 Ariz App 113; *State v Taggart,* 14 Ore App 408). The difference between these types of rental arrangements — particularly the relative ease by which a hotel occupancy can be terminated upon nonpayment of rent — cannot be classified as a "subtle" property law distinction of the unfavored type (see, e.g., *Jones v United States,* 362 US 257, *supra*); it is instead a highly relevant factor for determining the legitimacy of a defendant's privacy interest (see *United States v Salvucci,* 448 US 83, *supra; Rakas v Illinois,* 439 US 128, *supra*).

As a consequence of the hotel keeper's lien and the transitory nature of hotel tenancies, mere nonpayment of the rent terminates any reasonable expectation of privacy in the hotel room and the property contained in it (*Boone v State,* 39 Md App 20). The cases have uniformly held that the operator of a motel — essentially similar to a hotel — may consent to a warrantless search as soon as the rental period has expired (*United States v Jackson,* 585 F2d 653; *United States v Akin,* 562 F2d 459, cert den 435 US 933; *United States v Parizo,* 514 F2d 52; *United States v Croft,* 429 F2d 884, *supra; Sumdum v State,* 612 P2d 1018 [Alaska]; *State v Carrillo,* 26 Ariz App 113, *supra; People v Van Eyk,* 56 Cal 2d 471, cert den 369 US 824; *People v Crayton,* 174 Cal App 2d 267; *State v Mascarenas,* 86 NM 692; *State v Taggart,* 14 Ore App 408, *supra; State v Cox,* 12 Ore App 215; *State v Roff,* 70 Wn 2d 606; see, also, Ann., 2 ALR4th 1173, § 5). The lack of a possessory interest in a hotel room in turn influences the reasonableness of expectations of privacy, for: "[I]t is commonly known that those who operate such establishments are understandably interested in maximum paying occupancy and thus could be

expected to promptly clear the room of a guest who has overstayed so that another guest may be given the room." (2 LaFave, Search & Seizure, § 8.5, p 743.) After the rental period expires, society does not recognize the guest's asserted subjective expectation of privacy to be reasonable (see *State v Taggart, supra; Sumdum v State, supra,* p 1021). Thus, under either property law concepts or societal understandings (see *Rakas v Illinois,* 439 US 128, 143, *supra),* a defendant may not be deemed to have legitimate expectations of privacy after the expiration of the rental period.

Applying these principles, it is our view that the instant defendant had no reasonable expectation of privacy in the hotel room at the time of the search. He had fallen into rent arrears and the hotel management acted to lock him out so that the room could be rented to another guest. Nothing in the record indicates any arrangement between the management and defendant extending credit or permitting him to stay for an indefinite period without a further payment of rent (see *United States v Akin,* 562 F2d 459, 464, *supra).* On the contrary, the hotel manager testified that he had not seen the defendant for several weeks. Defendant's argument that he never intended to abandon his room is irrelevant, since the matter of abandonment is a necessary inquiry only during the rental period (*United States v Akin, supra; United States v Parizo,* 514 F2d 52, 55, *supra).* Thus, when defendant's rental term ended, the owner had the right to enter the room, remove the defendant's belongings, and prepare the room for the next guest (see *People v Crabtree,* 34 AD2d 1024, *supra; People v Sorise,* 58 Misc 2d 557, 561, affd 34 AD2d 736, *supra).* Since the defendant no longer had a legitimate expectation of privacy in the hotel room, his challenge to the search must be rejected.

Accordingly, there should be an affirmance.

GULOTTA, BRACKEN and BOYERS, JJ., concur.

Judgment of the County Court, Nassau County, rendered July 21, 1980, affirmed.