THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
LANDRAH PONTO, Respondent.

Second Department, October 29, 1984

**APPEARANCES OF COUNSEL**

*John J. Santucci, District Attorney* (*Thelma Lee* of counsel), for appellant.

*Joseph R. Maddalone, Jr.,* for respondent.

WEINSTEIN, J.

■ We are called upon on this appeal to determine the constitutional validity of a seizure of physical evidence subsequent to a warrantless entry by police into a defendant's furnished room based upon the homeowner's representation that defendant had therein a gun with which he had threatened her. At the time of the entry, defendant was substantially in arrears in his weekly rental payments. Necessarily subsumed in our analysis is the question of whether he had a legitimate expectation of privacy with respect to the room so as to entitle him to suppression of the physical evidence seized therefrom. In our view, that question must be answered in the affirmative. Inasmuch as the record reveals that defendant was still legally a lessee of the subject premises, who thus had a reasonable expectation of privacy with regard to his living space, we conclude that the police acted improperly in pursuing the course of action they did.

The facts are essentially undisputed. A Queens County Grand Jury charged defendant with the crime of criminal possession of a weapon based upon the discovery by the police of an automatic handgun in a closet of his rented room. Complainant, the owner of the one-family home in which defendant rented a room at the weekly rate of $50, summoned the police to her home on the evening of August 10, 1982, claiming that defendant had threatened her with a gun. The altercation arose when defendant offered her $60 in rent arrears. She complained that he had failed to pay her for 11 weeks and that she would deny him access to his room until he made a more substantial payment. Defendant thereupon demanded the return of his $60. When complainant refused to comply, he began to swear and to make threatening gestures towards her. He declared that he would break down the door of the room and blow off her head with his gun.

Complainant knew that defendant had a gun in his room since he had threatened her daughter with it some two weeks previously. Defendant's girlfriend had, at that time, warned complainant to call the police since defendant was dangerous and had once shot a man. Complainant had seen

the gun a second time on August 9, 1982 as she was packing up defendant's belongings because he had failed to pay his rent. On that occasion, she also saw bullets all over the room.

After defendant threatened complainant on August 10, 1982, she ran upstairs and telephoned the police. Officer O'Callaghan and his partner, who were in a marked radio motor patrol car, responded to the radio call. When they arrived at the location, defendant was standing outside the house. The police did not at that point know if defendant was involved in the reported incident. Officer O'Callaghan nevertheless directed defendant to remain outside with his partner while he went into the house to speak with the complainant. Complainant revealed that defendant had threatened her verbally and she repeated the substance of the threat to Officer O'Callaghan. After ascertaining that the altercation emanated from a landlord/tenant matter, he inquired concerning the gun. Complainant stated that the gun was not on defendant's person but that it was in his room. She then offered to show the officer where the gun was kept.

Upon finding the door to defendant's room locked, complainant unlocked it with her key, and Officer O'Callaghan followed her into the room. Complainant indicated that the gun was in a box located on a shelf within a portable metal closet. The closet doors were open and the gun was visible inside an uncovered cardboard box. Also in the box were approximately 12 loose rounds of ammunition. Officer O'Callaghan took the gun, holster and ammunition and vouchered said property. At no point had the police obtained a search warrant.

Criminal Term granted defendant's motion to suppress the use of the gun as physical evidence on the grounds that its seizure by the police was unreasonable, improper and in direct contravention of the Fourth Amendment of the United States Constitution. The People appeal from said order.

It is a well-established tenet of criminal law that a warrantless search of a private dwelling is abhorrent to our system of government absent certain limiting circumstances (see *Mapp v Ohio,* 367 US 643; *Agnello v United*

*States,* 269 US 20; *Boyd v United States,* 116 US 616). Such searches are regarded as illegal even in situations where the police have a well-founded belief that an article sought is concealed in the dwelling searched (*Agnello v United States, supra*).

More recently, the United States Supreme Court has come to focus upon an individual's reasonable expectation of privacy in the area searched since "the Fourth Amendment protects people, not places" (*Katz v United States,* 389 US 347, 351). Accordingly, it is now well settled that in order for a defendant to have standing to challenge the legality of a search and seizure, that defendant must demonstrate a reasonable expectation of privacy in the area searched (*United States v Salvucci,* 448 US 83, 85; *Rawlings v Kentucky,* 448 US 98, 104-106; *Rakas v Illinois,* 439 US 128, 148-149, reh den 439 US 1122; *People v Ponder,* 54 NY2d 160, 166; *People v Henley,* 53 NY2d 403, 407-408; *People v Butler,* 90 AD2d 797, 798, app dsmd 58 NY2d 1056; *People v McCloud,* 81 AD2d 645, 646).

It has been held that third-party consent is a recognized exception to the Fourth Amendment warrant requirement (*United States v Matlock,* 415 US 164, 171; *People v Henley,* 53 NY2d 403, 409, Cooke, Ch. J., dissenting in part; *People v Cosme,* 48 NY2d 286, 290). Said exception requires the voluntary consent of a person possessing common authority over or other sufficient relationship to the premises or effects sought to be inspected (*Coolidge v New Hampshire,* 403 US 443, reh den 404 US 874; *People v Cosme, supra,* p 290). Thus, the consent of a defendant's brother to the search of a bedroom occupied by the defendant and his wife was invalid (*People v Petrie,* 89 AD2d 910, 911; cf. *People v Remo,* 98 AD2d 843, 844 [consent by coemployee at truck stop valid]; *People v Battee,* 94 AD2d 935 [consent by defendant's mother who had keys to the latter's house and paid all the bills in connection therewith valid]).

In the instant case, complainant's consent to the police officer's entry into defendant's bedroom must be viewed as invalid inasmuch as it is clear from the record that defendant was a lessee of the subject premises. As such, complainant lacked the authority to consent to the police entry into defendant's private living space.

The prevailing rule in this and a number of other jurisdictions is that the lessor of real or personal property lacks the requisite authority to consent to a warrantless search of the leased property (*People v Wood,* 31 NY2d 975; *People v McNeeley,* 77 AD2d 205; *People v Stadtmore,* 52 AD2d 853; *People v Mullgrav,* 25 AD2d 784; see, also, *State v Carrillo,* 26 Ariz App 113; *State v Abram,* 353 So 2d 1019 [La], cert den 441 US 934; *Commonwealth v Weiss,* 370 Mass 416; *People v Taylor,* 67 Mich App 76; *State v Fitzgerald,* 19 Ore App 860; *State v Warfield,* 184 Wis 56; but see *Malloy v State,* 382 So 2d 1190 [Fla], wherein items seized during a search of the defendant's rented room were held admissible where the homeowner had consented to the search). There was thus no basis upon which Officer O'Callaghan could have reasonably believed that complainant had validly consented to a search of defendant's room inasmuch as she at all times represented herself as the landlady rather than as a cooccupant of the room (see *People v Adams,* 53 NY2d 1, 8, mot for rearg den 54 NY2d 832, cert den 454 US 854). Moreover, courts are required to indulge every reasonable presumption against the waiver of constitutional rights guaranteed by the Fourth Amendment (*People v McNeeley, supra,* p 209).

Notwithstanding the fact that defendant was in arrears in his rental payments, he had not yet been evicted. Even where an eviction warrant has been issued and a tenant is about to be removed, that tenant still retains a reasonable expectation of privacy with respect to the leased premises inasmuch as the single fact of nonpayment of rent should not result in the forfeiture of one's Fourth Amendment rights. A tenant about to be evicted does not reasonably anticipate that police officers will be present to conduct a general search for contraband on the pretense of insuring the total removal of his belongings (*People v Stadtmore,* 52 AD2d 853, 854-855, *supra*).

In the instant case, complainant conceded that although she had a key to defendant's room, which had its own separate lock she was not free to just walk in and out of it at will. The fact that she had a spare key to the lock is merely consistent with her position as landlady and did not give her any greater rights than that status affords her.

Although the police had defendant well under control, they did not attempt to obtain either his consent to enter his room or a search warrant. Inasmuch as defendant was standing outside the house when the police arrived, there was no danger of his attempting to destroy evidence within his immediate control. Absent any exigencies compelling an instantaneous police response, the warrantless entry and seizure were improper (see *United States v Durkin,* 335 F Supp 922, 926-927).

■ Nor do we adhere to the People's argument that the seizure was the work of a private citizen rather than of the government, thus placing the instant situation outside the ambit of the Fourth Amendment. "Where, as here, there has been affirmative participation by government officials in obtaining evidence, the police cannot avoid the constitutional limitations imposed upon them by claiming that the acts of a private party are also involved" (*People v Adams,* 53 NY2d 1, 7, *supra*).

Our decision herein in no way contravenes our holding in *People v Lerhinan* (90 AD2d 74) where a hotel guest was deemed to have lost his reasonable expectation of privacy with regard to his room upon the expiration of the rental period (accord *People v Rodriguez,* 104 AD2d 832). The *Lerhinan* court emphasized the fact that no conventional landlord-tenant relationship is involved in the ordinary rental of hotel rooms, labeling the difference between these two types of rental arrangements "a highly relevant factor for determining the legitimacy of a defendant's privacy interest" (*People v Lerhinan, supra,* p 78).

■ In this case, defendant had been residing in the room for approximately six to seven months at the time of the incident. This implies a tenancy somewhat more substantial than the mere transitory occupancy generally associated with hotel guests. Accordingly, defendant, unlike Lerhinan, retained a legitimate expectation of privacy in his room and his challenge to the police action must be upheld.

The order of Criminal Term suppressing the physical evidence seized should be affirmed.

LAZER, J. P., THOMPSON and EIBER, JJ., concur.

Order of the Supreme Court, Queens County, dated June 16, 1983, affirmed.