■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID GOLDSTEIN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County (Dubin, J.), rendered October 15, 1981, as amended October 6, 1982, convicting him of criminal possession of stolen property in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial (Browne, J.), after a hearing, of that branch of defendant's motion which sought suppression of certain physical evidence.

Judgment, as amended, reversed, on the law, plea vacated, that branch of defendant's motion which sought suppression of the physical evidence seized from defendant's hotel room granted, and matter remitted to Criminal Term for further proceedings.

Defendant challenges on appeal that portion of the order of

the suppression court which denied suppression as to certain jewelry seized during a warrantless search of his hotel.

The evidence at the suppression hearing revealed that on July 24, 1980, at about 10:00 A.M., Police Officer D'Esposito and his partner were in the manager's office of the Best Western Midway Hotel in connection with an unrelated incident. While they were there, an alarm was activated which indicated that a television set in one of the rooms was being tampered with. At the request of the manager, D'Esposito accompanied her to the room to investigate. After receiving no reply to a knock, the manager used her key to gain entry. While there was no one in the room and the television appeared to be secure, D'Esposito observed a quantity of jewelry spread throughout the room. The manager then locked the room again. Upon returning to the manager's office and reviewing the manager's records, it was ascertained that the room was rented to defendant and another individual, Anthony Loria. The registration slip also indicated that the occupants were driving a Cadillac with New York registration and license plates. D'Esposito transmitted this information to his supervisor. A computer check revealed that the license plate was not registered to the Cadillac or to either defendant or Loria. D'Esposito remained at the hotel until late that same afternoon, when his tour of duty ended. During that time neither he, nor, to his knowledge, any of the other officers on the scene, either entered the hotel room or took any inventory of the jewelry which he had seen. D'Esposito never saw the defendant during the time he spent at the hotel, and did not participate in the arrest. At the end of his tour, D'Esposito was relieved by a number of other officers, including Police Officers Sarter and Macklin.

Police Officer Gregory Macklin arrived at the hotel at about 4:00 P.M. to join the stakeout. He was informed at the scene that two individuals had been seen leaving and arriving at the hotel on occasions throughout the day in a brown Cadillac which had stolen license plates. At about 6:40 P.M., Macklin saw two men pull up to the rear of the hotel in the Cadillac bearing the stolen plates. After exiting the vehicle, the two men entered the hotel through a rear door from the parking lot. As they came into the hallway, Macklin and Sarter approached them and placed them under arrest. After reading defendant his rights, Macklin questioned him concerning the stolen license plates. Defendant made a statement at that time which was not suppressed. That ruling, however, is not at issue on this appeal. Macklin searched both individuals

incident to the arrest, and vouchered certain property, to wit, the automobile, the license plates, some burglars' tools found in the automobile, and the keys to the automobile, which were recovered from defendant's person. Some jewelry was also recovered from defendant's person at the time of the arrest, but it was vouchered by Officer Sarter. According to Macklin, he was informed later, at the precinct, that "all sorts of stolen property from numerous burglaries that happened that day out in Suffolk County" were recovered from the room defendant and Loria had occupied. Macklin did not know when the jewelry was obtained from the room, but he assumed it was after the arrest. He himself, however, never entered the room.

Criminal Term denied suppression, finding, *inter alia,* that the evidence seized from the hotel room was in plain view. We now reverse.

It is well established that the protections provided by the US Constitution 4th Amendment against unreasonable searches and seizures extend to hotel guests *(Stoner v California,* 376 US 483; *United States v Jeffers,* 342 US 48; *see also, People v Ponto,* 103 AD2d 573; *cf. People v Lerhinan,* 90 AD2d 74). There is nothing in this record to indicate that at the time of the seizure defendant's right to exclusive occupancy of the room had terminated *(see, People v Lerhinan, supra).* Indeed there is no evidence at all as to when, how or by whom the seizure was made. Nor does it appear that the seizure was made under color of a search warrant. Warrantless searches are per se unreasonable unless an exception to the warrant requirement is shown to exist (US Const 4th Amend; *Coolidge v New Hampshire,* 403 US 443, *reh denied* 404 US 874). We find no such exception exists at bar. First, there is nothing in the record to indicate that any exigent circumstances existed which necessitated an immediate entry into the room. In fact, the police had been conducting a stakeout of the hotel from sometime after 10:00 A.M., when Officer D'Esposito first entered the room, until approximately 6:40 P.M., when the arrest occurred. Further since the arrest itself occurred in the hallway, apparently some distance from the room, entry into the room cannot be justified as a search incident to the arrest, nor as an action necessary to insure the safety of the arresting officers or to prevent the destruction or secretion of evidence *(see, People v Gokey,* 60 NY2d 309).

Nor can we accept the People's contention that this property was in plain view and therefore was not encompassed within defendant's expectation of privacy *(see, People v Knapp,* 52 NY2d 689). While it is not disputed that D'Esposito's

original entry into the room was lawful, and his observation of certain property therein was proper, no seizure was made at that time nor was any effort made to inventory that which was observed. Having left the premises with the hotel manager, who relocked the door, the lawful presence of the police on the premises terminated. Any further entry onto the premises had to be effected by means of the execution of a search warrant, or pursuant to an exception to that rule, such as those enumerated above. Finally, we find nothing in this record to support the People's conclusion that this evidence would inevitably have been discovered (see, People v Knapp, supra; People v Fitzpatrick, 32 NY2d 499, 506, cert denied 414 US 1033, 1050). Thompson, J. P., Brown, Weinstein and Eiber, JJ., concur.