■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BEOTISE CARLISLE, Appellant.—Appeal from a judgment of the

Supreme Court, New York County (Herbert Altman, J. on suppression motion; Frank Blangiardo, J. at trial), rendered on June 6, 1986, convicting defendant, after trial by jury, of four counts of criminal possession of a forged instrument in the second degree, three counts of grand larceny in the third degree and one count of petit larceny, unanimously held in abeyance, and the matter remanded to the Supreme Court for a hearing in accordance with this memorandum.

The charges against defendant arose from his endorsement of four checks which had been stolen from CMCO, Inc., and which bore an unauthorized signature as the maker of the check and defendant's name as payee. Three of the checks had been cashed for defendant by the 23rd Street YMCA and the funds used in part to pay for his room. The fourth check was cashed by the Amalgamated Bank after defendant told a bank officer, whom he knew personally, that it was his paycheck. At his arrest, defendant stated, "I lost my job and this guy Ishmael Davis hired me to drive a truck and paid me with those checks."

Prior to trial, defendant moved to suppress three additional CMCO, Inc. checks naming him as payee, which were not the subject of any charges against him, and a piece of paper bearing two signatures, which were recovered from his room at the YMCA after he was arrested. In support of the motion, counsel alleged that the employees of the YMCA, "acting under directions from the police, seized and inventoried the defendant's personal effects from the room in which he was residing at the time of his arrest." Counsel also asserted that the police obtained the property from the YMCA without a valid warrant. The People responded that the search conducted by the YMCA's civilian employees was solely for the purpose of cleaning defendant's room and safeguarding his property. After those employees found the evidence in the course of cleaning up, they contacted the police, who subsequently obtained a warrant and then went through the defendant's belongings themselves. The court summarily denied the motion.

At trial, the 3 checks and signature paper, recovered from defendant's room, were admitted into evidence together with 3 other checks which also were not the subject of any charges. The latter 3 checks, all payable to defendant, consisted of one check, bearing defendant's welfare identification number and what appeared to be his double endorsement, which had been cashed at a check cashing service, a second which had been

cashed by defendant at the YMCA, and a third, unendorsed, which had been found on the street.

Defendant argues that the admission of these 6 checks and the "signature paper" constituted improper evidence of uncharged crimes. With respect to the 3 checks and document that had been recovered from his room, it is additionally argued that the court's summary denial of defendant's suppression motion was improper and that, at the very least, a hearing was required.

The admission into evidence of the 6 checks and signature document, which were not the subject of any charges, was not error. Defense counsel's opening statement, as well as defendant's post-arrest statement to the police, emphasized that the issue for the jury's resolution in this case was not whether defendant had endorsed and cashed the checks which were the subject of the charges, but whether he did so knowing that they were forged, as required by Penal Law § 170.25. In that context, evidence of these uncharged crimes was admissible to demonstrate defendant's knowledge that the four checks, which were the subject of the charges against him, had been stolen and forged and to refute the argument that he believed them to be paychecks. *(See, People v Alvino,* 71 NY2d 233.) The evidence showing that defendant had been either in possession of, or at least named as payee, on a large number of such checks over a very short period of time was relevant to demonstrate that he knew that the checks on which he was charged had been stolen and forged and that he could not have reasonably believed that they were paychecks.

With regard to the suppression issue, however, we find that defendant's allegations, that the YMCA employees were acting under directions from the police, were sufficient to warrant a hearing. Where civilians act as agents of the police, "the full panoply of constitutional provisions and curative measures applies". *(People v Esposito,* 37 NY2d 156, 160.) Since there was no real dispute as to defendant's expectation of privacy in his hotel room at the time he was arrested *(see, People v Lerhinan,* 90 AD2d 74), the competing factual allegations concerning the relationship between the police and the YMCA employees who searched defendant's room presented questions of fact as to whether the warrantless search violated defendant's rights and whether the warrant subsequently obtained by the police was valid. Thus, the summary denial of defendant's motion was error.

The People argue that the admission of the evidence recovered from defendant's room, even if improperly seized, would,

at best, be harmless error since similar evidence, by way of the other 3 uncharged checks, was properly admitted. We cannot agree. The critical issue was defendant's knowledge that the checks on which he was charged were stolen and forged. Defendant's position that all the checks, both those on which he was charged and those not the subject of charges, were given to him as paychecks for driving a truck, would not have been significantly undercut by the admission solely of the 3 uncharged checks not recovered from his room. There was nothing about those checks—2 of which had been negotiated and the third, apparently lost, since it was found on the street unendorsed—that was particulary inconsistent with defendant's paycheck assertion. In distinction, the three unendorsed checks and the "practice signature" paper found in his room, both by themselves and in conjunction with the other checks, cast a substantially different light on the validity of defendant's assertion that all of the checks were paychecks and on his alleged lack of knowledge that the checks were stolen. Thus, the admission of the evidence taken from defendant's room, if illegally obtained, does not withstand harmless error analysis. Accordingly, a hearing must be held to determine whether the evidence recovered from defendant's room should have been suppressed.

While the case is being remanded for a suppression hearing, we note that defendant has not demonstrated the necessity for a reconstruction hearing. Not only is the decision of the Supreme Court to set $5,000 bail unreviewable on this appeal, but the allegation that the court was unfairly prejudiced in setting bail because of defendant's participation in an altercation with court officers in October, 1985 is completely belied by the fact that he remained free, apparently on his own recognizance, until March 31, 1986. With respect to defendant's speedy trial motions, dated March 4, 1986 and March 21, 1986, his own papers demonstrated that certain periods of time, including several weeks for motion practice, were statutorily excludable, and failed to make a prima facie showing that defendant had been denied his statutory right to a speedy trial. Consequently, the motions were properly denied without a hearing. *(People v Lomax,* 50 NY2d 351.) Concur—Sullivan, Carro, Ellerin and Smith, JJ.

Murphy, P. J., concurs in the result only.