[907 NYS2d 244]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH A. HARDY, Appellant.

Second Department, August 10, 2010

APPEARANCES OF COUNSEL

*John F. McGlynn*, Rockville Centre, for appellant.

*Francis D. Phillips II, District Attorney*, Goshen (*Robert H. Middlemiss* and *Andrew R. Kass* of counsel), for respondent.

## OPINION OF THE COURT

CHAMBERS, J.

On this appeal, the primary issue before us is whether a hotel guest who was in arrears on the rent retains a reasonable expectation of privacy where the hotel management did not take affirmative steps to repossess the room until after a hotel

employee reported that she detected the odor of marijuana emanating from his room. We hold that a hotel guest, under these circumstances, does not have a reasonable expectation of privacy.

## I.

At a suppression hearing, the prosecution called Kelly Gillespie, an employee of the Middletown Hampton Inn, New York State Trooper Joseph Rivera, and New York State Police Investigator Jan Golding. According to the People's evidence, on February 13, 2007, the defendant checked in to room 303 of the Hampton Inn in Middletown, New York. Hotel records revealed that at checkin he paid the sum of $139.48 in cash, which covered the use of the room until the following morning at the 11:00 A.M. checkout time. The following morning, the defendant did not pay for the 14th, but was nevertheless permitted to stay in his room. On February 15 the defendant paid the sum of $313.57 in cash, the room charge for the previous night and the night of the 15th.

On February 16, the defendant again failed to pay the room charge by checkout time. Hampton Inn personnel called him throughout the day asking for payment. Although the official hotel policy is that guests must prepay their room charge by 11:00 A.M. for the following day, Gillespie related that the hotel manager would let nonpayment "slide" the first time "with some guests," but a second occurrence would cause him to "take further action."

Throughout the defendant's stay, the hotel had received complaints from other guests regarding loud noises coming from his room, including the sound of his door opening and closing. On February 17 at approximately 5:15 A.M., while she was conducting security rounds on the third floor, Gillespie heard a loud noise and smelled the odor of marijuana emanating from the defendant's room. Based on the noise complaints, the marijuana odor coming from his room and the defendant's failure to pay the room charge for the night, and after discussion with her coworker, Gillespie determined that she would evict the defendant. She then called the police to ask for their assistance with the eviction.

Responding to the hotel, the state troopers were met by Gillespie, who asked them to accompany her to the defendant's room. When they entered the third-floor hallway from the elevator, the troopers detected the odor of "burnt marijuana." The

troopers noted that the odor became stronger as they walked towards the defendant's room. With the troopers standing to her side, Gillespie knocked several times on the defendant's door before he answered. While there is some dispute among the People's witnesses as to what happened next, the County Court found that the defendant opened the door slightly, then he attempted to close the door, but Trooper Rivera stepped in the doorway. Gillespie identified herself and explained to the defendant that the hotel wanted him to pack his things and leave.

From inside the doorway, Trooper Rivera noticed, on top of an opened suitcase, a black digital scale, on top of which was a white powder. He asked the defendant about the marijuana odor, and the defendant admitted to having smoked marijuana in his room. Trooper Rivera, after taking a closer look at the suitcase and seeing three bundles of money, asked the defendant about the money and scale, and, in response, the defendant said that the money came from his employment and the scale might have been left there by two women who were in his room earlier. The police officers entered the defendant's room and seized a bag containing 85 pills of methylene methamphetamine (MDMA or Ecstasy) and a bag of cocaine, both found in a Kleenex holder in the bathroom, a small bag of marijuana, found in a pocket of a pair of pants on the floor, and burnt marijuana cigarettes in an ashtray.

At 10:00 A.M. the defendant was taken to the police barracks where, after being advised of his *Miranda* rights (*see Miranda v Arizona*, 384 US 436 [1966]) for the first time, he agreed to speak with the police without the presence of an attorney. He claimed no knowledge about how the scale came to be in his room and indicated the money came from his employment at a bar.

Following the People's case, in his own defense, the defendant testified that, as Gillespie indicated, when he registered at the hotel on February 13, he paid for the night and occupied room 303 and that daily checkout was at 11:00 A.M. He paid the rental charge for the second and third night on February 15. He did not pay for the night of February 16 on that day. However, it was his understanding that he could pay for the 16th on the following day, as he had previously done, and that he could occupy the room until 11:00 A.M. on the 17th. His guest folio also disclosed that the defendant paid the sum of $51.67 in cash on February 16 for accumulated phone charges and showed an unpaid balance in the sum of $139.48, representing the room

charge for staying the night of February 16. The defendant's key card was not deactivated at any point on the 16th.

## II.

At the conclusion of all the hearing testimony, the County Court entertained oral argument on the issue of standing. The defendant argued, just as he does now on appeal, that he possessed a reasonable expectation of privacy in his room because the rental period had not expired at the time of the search. While the defendant had not paid for the night of the 16th, the hotel had previously allowed him to stay beyond the checkout time, and he could pay for the previous night on the following morning. As further evidence that the hotel did not strictly enforce its 11:00 A.M. checkout time, the defendant argued that he only paid for his telephone charges on the 16th, and his key-card was never deactivated. The defendant, therefore, contended that he had standing to challenge the warrantless search of his room which was not justified by an exception to the warrant requirement and, consequently, the evidence recovered had to be suppressed.

The People contended, and reiterate on appeal, that once the defendant failed to pay for the night of the 16th, the rental period ended and he lacked a reasonable expectation of privacy in his room. In addition to the defendant not paying for the night, the odor of burnt marijuana emanating from the defendant's room justified the hotel employee's decision to evict him from the hotel with the assistance of the police. In any event, the People asserted, the search was reasonable because the police were faced with an emergency situation.

After argument of counsel, the County Court issued an order dated January 25, 2008, denying that branch of the defendant's omnibus motion which was to suppress the physical evidence recovered from his room on the ground that defendant lacked standing to challenge the search because the rental period had expired on the 16th upon his nonpayment. The County Court also denied that branch of the defendant's omnibus motion which was to suppress his statements, finding that the defendant was not in custody at the time he first spoke with Trooper Rivera, and, at the barracks, the defendant made those statements after he had knowingly, voluntarily, and intelligently waived his *Miranda* rights.

Thereafter, the defendant pleaded guilty to the entire indictment, but maintained his right to appeal from the judgment.

## III.

It is a basic premise of the law of search and seizure that in order to claim the protection of the Fourth Amendment, a defendant must have a legitimate expectation of privacy in the place searched, which exists where he or she has manifested an expectation of privacy that society recognizes as reasonable (see *Minnesota v Carter*, 525 US 83, 88 [1998]; *Rakas v Illinois*, 439 US 128, 143 n 12 [1978]; *People v Ramirez-Portoreal*, 88 NY2d 99, 108 [1996]; *People v Stanley*, 50 AD3d 1066, 1067 [2008]). In determining whether an expectation of privacy is reasonable, one must look to " 'a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society' " (*Minnesota v Carter*, 525 US at 88, quoting *Rakas v Illinois*, 439 US at 143 n 12).

Further, the protection of the Fourth Amendment against unreasonable searches extends to hotel guests (see *Hoffa v United States*, 385 US 293, 301 [1966]; *People v Goldstein*, 116 AD2d 658, 660 [1986]; *People v Lerhinan*, 90 AD2d 74, 76 [1982]). However, because of the transitory nature of hotel tenancies, mere nonpayment of rent terminates any reasonable expectation of privacy in the hotel room (see *People v Lerhinan*, 90 AD2d at 78). Thus, in *Lerhinan*, we held that a defendant who was two weeks in arrears in rent did not have a reasonable expectation of privacy in his room (*id.* at 77-79). In *Lerhinan*, we noted that there was nothing in the record to indicate any arrangement between management and the defendant extending credit or permitting him to stay for an indefinite period without a further payment of rent (*id.* at 79).

■ In this case, while the defendant was one day in arrears on his rental charge, the evidence clearly established that the hotel allowed him to continue his occupancy. Moreover, earlier in the defendant's stay, the hotel had permitted him to pay for the previous night on the following morning. The hotel employee testified that a guest was typically afforded only a one-day grace period before "further action" was taken. Nevertheless, the People presented no evidence that the defendant was aware of this policy. And, in any event, the hotel failed to take any affirmative action to evict the defendant until 6:00 A.M. on the 17th when the employee smelled marijuana emanating from his room. The defendant's keycard was never deactivated, and the fact the hotel took no action until nearly 19 hours after checkout time demonstrated that the hotel was allowing him to

stay the night (*id.* at 78-79 [" '(It) is commonly known that those who operate (hotels or motels) are understandably interested in maximum paying occupancy and *thus could be expected to promptly clear the room of a guest who has overstayed so that another guest may be given the room*' " (quoting 2 LaFave, Search and Seizure § 8.5, at 743 [emphasis added])]; *see also United States v Dorais,* 241 F3d 1124, 1128 [2001] ["(A) defendant has no reasonable expectation of privacy in a hotel room when the rental period has expired and the hotel has taken affirmative steps to repossess the room"]). Even though the hotel had attempted to contact the defendant throughout the day on the 16th regarding his nonpayment, hotel records established that he only paid his accumulated telephone charges for the day, and his bill showed an outstanding balance. The defendant continued to remain in his room without consequence. Therefore, we conclude that, at the time of the police search, the rental period had not expired for lack of payment, and the County Court erred in holding that the defendant lacked standing on that basis (*see United States v Owens,* 782 F2d 146, 149-150 [1986]; *United States v Watson,* 783 F Supp 258, 263 [1992]; *cf. People v Lerhinan,* 90 AD2d at 79; *United States v Kitchens,* 114 F3d 29, 32 [1997]).

Consistent with *Lerhinan,* we find that the policies and practices of a hotel may result in the extension past checkout time of a defendant's reasonable expectation of privacy. The existence and duration of that expectation depend on the facts and circumstances in each case (*see United States v Owens,* 782 F2d at 150; *State v Davis,* 86 Wash App 414, 419, 937 P2d 1110, 1113 [1997]; *People v Montoya,* 914 P2d 491, 492-493 [Colo 1995]).

Similarly, just as the expiration of the rental period will extinguish a hotel guest's reasonable expectation of privacy in his or her room, so, too, will a justifiable ejection. In determining whether a person has a reasonable expectation of privacy, an ejection for good cause is no different than an expiration of the rental period because of nonpayment (*see United States v Bautista,* 362 F3d 584, 589 [2004]; *United States v Haddad,* 558 F2d 968, 975 [1977]). This analysis finds support in *de Wolf v Ford* (193 NY 397, 403-404 [1908]), wherein the Court of Appeals held that

> "an innkeeper should have the right to make and
> enforce such reasonable rules as may be designed to
> prevent immorality, drunkenness, or any form of

misconduct that may be offensive to other guests, or that may bring his inn into disrepute, or that may be radically inconsistent with the generally recognized proprieties of life. To these reserved rights of the innkeeper the guest must submit." Thus, in *United States v Haddad,* a hotel ejected a guest for good cause where he was seen on several occasions carrying a gun in the hotel, was intoxicated, and created a disturbance leading to his arrest for disorderly conduct (558 F2d at 975). So, too, in *United States v Rambo* (789 F2d 1289, 1295 [1986]), a defendant asked to leave the hotel at the request and on behalf of the hotel manager because of his disorderly conduct was justifiably ejected under Minnesota law. Finally, in *United States v Allen* (106 F3d 695, 699 [1997], *cert denied* 520 US 1281 [1997]), a defendant's right to occupy his hotel room was properly terminated where, among other things, a hotel employee had observed a large quantity of marijuana in his room.

Here, the complaints of loud noise and the odor of marijuana emanating from the defendant's room gave the hotel good cause to eject the defendant from his room (*id.*; *State v Perkins,* 588 NW2d 491, 493 [Minn 1999]). Once the hotel possessed good cause to eject the defendant and the hotel employee took the affirmative step of contacting the police for their assistance in physically evicting the defendant, the defendant's expectation of privacy in the room was extinguished (*see United States v Cunag,* 386 F3d 888, 895 [2004] [holding that hotel took justifiable affirmative steps to repossess the defendant's room and to assert dominion and control over it where the hotel discovered and confirmed that the defendant procured occupancy by criminal fraud and deceit and locked him out of the room while registering a report with the police]; *United States v Allen,* 106 F3d at 699-700 [where the defendant was using his motel room to store illegal drugs, had failed to pay the rent due, and the motel manager had locked the defendant out of his room, the defendant's privacy interest in the room was extinguished]; *United States v King,* 693 F Supp 2d 1200, 1212-1214 [2010] [holding that the defendant's expectation of privacy was extinguished where, pursuant to hotel policy, the defendant was automatically evicted upon his arrest by FBI agents, and a hotel employee asked for the agents' assistance in completing the eviction of the room's occupants and contents]; *see also People v*

*Lerhinan*, 90 AD2d at 79 [holding that the defendant had no reasonable expectation of privacy at the time of the police search as he had fallen into rent arrears and hotel management acted to lock him out so that the room could be rented to another guest]; *cf. United States v Dorais*, 241 F3d at 1128 [holding that the defendant still retained a reasonable expectation of privacy in his motel room where the motel manager had not yet determined if the defendant had fraudulently procured the room and did not ask the police to evict the defendant]). As a result, control over the room had reverted back to the hotel, and the hotel then had the authority to consent to the police entering into the room in order to evict the defendant physically (*see People v Lerhinan*, 90 AD2d at 79; *United States v King*, 693 F Supp 2d at 1213). During the physical eviction, the police observed in plain view a scale and white powder on top of an opened suitcase, which justified a more extensive search of the room and its contents.

Accordingly, because the defendant was justifiably ejected, he lacked standing to challenge the search of the room and its contents (*see Rawlings v Kentucky*, 448 US 98, 105-106 [1980]; *United States v Allen*, 106 F3d at 699).

## IV.

█ We turn, then, to the defendant's contention that the statements he made to Trooper Rivera were obtained through custodial interrogation prior to *Miranda* warnings. The standard by which to determine whether a defendant was in custody is what a reasonable person, innocent of any crime, would have thought had he or she been in the defendant's position (*see People v Yukl*, 25 NY2d 585, 589 [1969], *cert denied* 400 US 851 [1970]; *People v King*, 222 AD2d 699 [1995]). Here, the defendant's admission to Rivera that he had been smoking marijuana in his room was made prior to being in custody and in response to an investigatory question (*see People v Yukl*, 25 NY2d at 589; *People v Sachs*, 15 AD3d 1005, 1007 [2005]; *People v Jackson*, 261 AD2d 636, 637 [1999]). However, after having admitted to using marijuana, the defendant was in custody and the un-Mirandized exculpatory statements he made should have been suppressed (*see People v Bongarzone-Suarrcy*, 13 AD3d 385, 386 [2004], *affd* 6 NY3d 827 [2006]; *People v Beckwith*, 303 AD2d 594, 595 [2003]; *People v Lyons*, 125 AD2d 593, 595 [1986]). Nevertheless, several hours later and after being apprised of his *Miranda* rights, the defendant made similar statements to

Investigator Golding at the barracks, and, thus, the defendant was not prejudiced by the County Court's failure to suppress his earlier exculpatory statements (*see People v Beckwith*, 303 AD2d at 595; *People v Hotchkiss*, 260 AD2d 241, 242 [1999]; *see also People v Lyons*, 125 AD2d at 595).

Accordingly, the judgment is affirmed.

MASTRO, J.P., SANTUCCI and BELEN, JJ., concur.

Ordered that the judgment is affirmed.