■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v NELLY AQUDELO, Respondent.—Order, Supreme Court, New York County (Jacqueline Silbermann, J.), entered April 11, 1986, which granted defendant's motion to suppress physical evidence, is unanimously reversed, on the law and on the facts, and the motion is denied.

Order, Supreme Court, New York County (Franklin R. Weissberg, J.), entered October 6, 1987, which dismissed the indictment against defendant, is unanimously reversed, on the law and on the facts, indictment reinstated, and, the matter is remanded for further proceedings.

On September 25, 1985, New York City Police Detective Thomas Higgins (Detective Higgins) arrested the defendant. Thereafter, by a November 1985 indictment, number 7637/1985, a New York County Grand Jury charged defendant with the crime of criminal possession of a controlled substance in the first degree (Penal Law § 220.21).

Following indictment, defendant moved to suppress physical evidence, which consisted of two kilograms of cocaine. On February 4, 1986, Criminal Term held a hearing. In substance, the evidence adduced at that hearing indicates:

In the summer of 1985, New York City police officers assigned to the Manhattan North Narcotics Division conducted an undercover investigation concerning apartment 5E, 845 Riverside Drive, New York County. Evidence obtained in that investigation indicated that apartment 2A, in the same building, was a so-called narcotic warehouse, which was supplying the narcotics being sold from apartment 5E. Thereafter, on the evening of September 25, 1985, a team of officers, pursuant to search warrants, entered apartments 2A and 5E.

During their search of apartment 2A, the police recovered, *inter alia*, as follows: approximately $130,000 in cash, including marked money that undercover officers had used to buy drugs, which had been sold from apartment 5E, mentioned *supra*; two loaded handguns; a loaded shotgun; four plastic bags of white powder; two scales; drug paraphernalia; and a lease, which contained the name of Ms. Lucille Rodriguez.

At approximately 10:00 P.M., while the search was still underway, defendant and a male companion rang the bell of apartment 2A. Detective Higgins opened the door and asked these two people what they wanted. Defendant's companion answered that he wanted to see "Lucy". Thereafter, Detective Higgins invited them into the apartment. At that time, Detective Higgins was dressed in plain clothes, with an exposed holstered gun on his right hip, and his badge was not displayed.

Soon after entering the apartment, defendant dropped her shoulder bag, and it made a loud thump when it hit the floor. Since Detective Higgins knew that guns had been found in the apartment, he feared that there was a gun inside of that bag. Therefore, he picked up the bag, which weighed approximately 5 or 6 pounds, and felt something very hard through the material. When he unzipped the bag, he found two tightly wrapped square, shiny brown packages. On at least 10 prior occasions, Detective Higgins had seen narcotics in "rock" or "brick" form identically wrapped. In addition, while executing the search warrant, the police had found, in apartment 2A, an identically wrapped narcotics "brick", hidden in a trapdoor.

After discovering those two packages in defendant's bag, Detective Higgins arrested defendant and her companion.

These packages were vouchered and sent to the police laboratory, where they were opened and the contents tested. Each package was found to contain over two pounds of cocaine.

Although the hearing court held that Detective Higgins "had probable cause to arrest based on his experience, the 'trademark' shape, packaging and feel of the narcotic bricks which he observed in a 'warehouse' for narcotics" it granted, in an order entered April 11, 1986, defendant's motion to suppress the two packages, since the police had not obtained a separate search warrant before they opened those packages in the laboratory. Subsequently, in an order entered October 6, 1987, Criminal Term dismissed the indictment.

The People appealed.

Since defendant did not submit a brief, we directed the clerk of the court to contact her and advise her of the pending appeal, but defendant could not be located.

In *Arkansas v Sanders* (442 US 753, 764-765, n 13 [1979]), the United States Supreme Court noted that "[n]ot all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers * * * by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to 'plain view,' thereby obviating the need for a warrant". Furthermore, that same court, in *Robbins v California* (453 US 420, 427 [1981]), stated "if the distinctive configuration of a container proclaims its contents, the contents cannot fairly be said to have been removed from a searching officer's view".

Applying this legal authority to the factual setting before us, which indicates defendant brought two distinctively wrapped packages to a place where narcotics were stored, and the arresting officer, in view of his experience, recognized that packaging as the type used to wrap narcotics, we find that the police did not need a search warrant to open them, since "the distinctive configuration of [the] container[s] proclaimed [their] contents" *(Robbins v California, supra,* at 427).

Based upon our analysis *supra,* we find Criminal Term erred in granting defendant's motion to suppress, and in dismissing the indictment.

Accordingly, we reverse, deny defendant's motion and reinstate the indictment. Concur—Kupferman, J. P., Ross, Rosenberger, Smith and Rubin, JJ.