OPINION OF THE COURT
George L. Jurow, J.
This court holds — apparently for the first time in New York State — that the so-called "plain-view” doctrine, which permits the warrantless seizure of evidence under certain circum *150 stances, may be extended to include the seizure of evidence discovered by the sense of touch as well, that is, by what has been called "plain touch”.
The need to consider the constitutional permissibility of a "plain touch” doctrine arises in the context of this Mapp hearing in which Marrhonda G., a 13-year-old juvenile, arrested and charged with weapons possession, moves pretrial to suppress the contraband recovered during her arrest, specifically, two 9 mm semiautomatic weapons; one .38 semiautomatic weapon; one .44 caliber revolver; and 150 rounds of ammunition.
The specific question is whether the police may, without a warrant, and during the lawful detention of an individual, open a closed duffel bag initially carried by the detainee but placed 15 feet away from the detainee when opened, under circumstances in which the police lawfully picked up the closed bag and then with reasonable or virtual certainty felt the outline of a weapon from the outside of the bag.
I. FINDINGS OF FACT
On the evening of April 5, 1990 Port Authority Police Officer Joseph DeFelice observed and became engaged in conversation with the respondent who was alone at the Port Authority Bus Terminal in Manhattan. Respondent was carrying a large full canvas "knapsack” type bag, approximately 3 feet by 2 feet, secured by a drawstring at the top.
After questioning the respondent, and based on obtaining vague and unsatisfactory pedigree information and other factors, DeFelice suspected that the respondent was a runaway. DeFelice therefore told the respondent to accompany him to the Youth Services Unit office so that he could verify her information.
Upon entering the office (a special detention facility for investigating the status of suspected runaways, and juveniles in distress), DeFelice told respondent to "put the bag down” (without specifying where) and to sit down in a chair in the back of the room. Respondent dropped the bag on the floor and went to the rear seating area. The office is about 15 by 25 feet, with officer desks on each side, row chairs for the juveniles at the rear end, and a walkway about three feet wide, in the middle. Several officers and juveniles were already present in the office, including a Sergeant Joseph Giardina who was seated at his desk. The bag, which had been dropped in the walkway, was a few feet from Giardina’s desk.
*151 The dropped bag and the seated respondent were separated by a distance of 15 feet. DeFelice testified that it was their standard procedure to keep juveniles detained in the office separated from their packages or bags, for safety reasons. In addition, on entering the office DeFelice conducted a "pat-down” of respondent, which revealed no weapons or contraband.
DeFelice then telephoned an alleged relative of the respondent in Connecticut. After an unsatisfactory telephone conversation, DeFelice advised Sergeant Giardina of the results of the call. Giardina then got up from his desk to walk over to respondent and speak with her. When he got up from his desk, and started to walk in the direction of respondent, he picked up respondent’s bag from the floor "to put it someplace * * * off the floor * * * I was going to put it on a desk or something like that”. When Giardina picked the bag up, grasping it with one hand on the top and one hand in the vicinity of the side bottom of the bag, he "first felt the butt of the gun and the trigger guard * * * when I felt that and the trigger guard, then I felt the rest of the gun * * *. There was also other clothing in there that was pressing it more or less towards the side of the bag * * * I felt it as [an automatic]. I’m aware of how a gun feels, automatics and revolvers. A revolver is not as box-like as an automatic.”
Giardina then called DeFelice over to "feel this”, and, placing his hand where Giardina’s hand had been (near the side bottom of the bag) DeFelice "felt an unmistakable impression of a gun * * *. I felt the square butt of an automatic weapon, and then followed the impression right down the side and felt the trigger mechanism of the butt and the frame of a gun, right down to the barrel.” The officers then pulled open the top of the bag and recovered the four guns, three boxes of ammunition, and a variety of clothing and linen.
II. ISSUES PRESENTED
The subject incident involves two stages or categories of issues. The first category involves the legality of respondent’s detention. The second category, which arises only if the respondent’s detention is determined to be lawful, is the legality of the police opening respondent’s bag. The second category, which is the primary focus of this opinion, involves in turn three subissues: (1) the nature and propriety of the police action in initially touching the bag, when it was separated from the juvenile; (2) whether a warrantless search of the *152 separated bag can be justified as incident to a lawful arrest; (3) whether, assuming the propriety of the initial picking up of the separated bag, the police, on feeling what was clearly perceived to be a weapon, had the authority to open the bag and retrieve its contents.
III. PRELIMINARY LEGAL FINDINGS
Based upon its observation of the testimony of both DeFelice and Giardina, including the nature of their testimony, and their demeanor, the court found both officers to have been credible witnesses.
A. The Detention: The respondent was detained pursuant to Family Court Act § 718, the so-called "runaway statute” which permits the police to detain a suspected juvenile runaway at a certified facility for further investigation and return to his or her parents or guardians. Section 718 has been upheld as a valid exercise of the parens patriae authority designed to protect juveniles in distress. (Matter of Terrence G., 109 AD2d 440.) The detention, however, requires probable cause to believe the juvenile is a runaway.
DeFelice testified that he determined the respondent was a suspected runaway on the basis of a variety of factors derived from his encounter with and questioning of the respondent. Based upon the totality of these factors,[1] the court concluded that DeFelice had the required probable cause to believe respondent was a runaway, and that respondent’s detention at the youth facility was lawful. The initial patdown of respondent was also justified as the "least intrusive method” to protect safety. (Matter of Terrence G., supra.)
B. The Initial Touch of the Bag: Based on the credible testimony of both officers, the court concludes that Officer Giardina’s initial touching of respondent’s bag was lawful and not otherwise improper, that is, it was essentially inadvertent. The question is not whether the officers were interested in what was in respondent’s bag (doubtlessly, they were), but whether their actions, viewed in context, were permissible. The court concludes that Giardina’s action in touching the bag to move it off a walkway floor was permissible and that his *153 and DeFelice’s testimony to that effect was not, for example, "patently tailored to nullify constitutional objections” (People v Garafolo, 44 AD2d 86, 88) nor simply a contrived setup for an impermissible search.
C. The Search as Incident to a Lawful Arrest: Given the propriety of Giardina’s initial contact with the outside of the bag, and his definite feel of a weapon in the interior (confirmed by DeFelice’s feel in the same place), the question becomes whether the officers could then open the bag and search its interior on the theory that the search would be incident to a lawful arrest. There is no doubt that the definite feel of a weapon provided probable cause to believe the bag (and therefore the respondent) possessed a weapon and therefore provided probable cause for respondent’s arrest. Additionally, at the time the bag was felt, the respondent was under the equivalent of full custodial arrest (Matter of Terrence G., supra).
A review of the existing line of New York’s so-called "container” cases indicates, although not entirely free from doubt, that the officers’ opening of respondent’s bag cannot be justified under New York law, as incident to a lawful arrest. The critical variable in reaching this conclusion was the physical separation of 15 feet between the respondent and the bag, at the time the police opened the bag.
A warrantless search incident to a lawful arrest has historically been considered a major exception to the warrant requirement. However, in defining the term "incident” to an arrest, New York law has diverged from Federal law in adopting a more restrictive definition, pursuant to the New York State Constitution. (See, People v Belton, 55 NY2d 49.) In general, under New York law, to justify a container search the container or bag must be within the "grabbable area” and exigent circumstances must be present, i.e., the need to protect the safety of the public or the arresting officers, or to protect evidence from destruction or concealment. (See, e.g., People v Torres, 74 NY2d 224 [car stop, passengers removed from car and patted down, officer reaches into car and feels outside of a bag discerning shape of a gun; held, no exigent circumstances present regarding safety of officer; "theoretical concern” in Michigan v Long (463 US 1032) doctrine, that suspect could reenter vehicle and then harm officer, rejected as "far-fetched”]; People v Gokey, 60 NY2d 309 [no exigent circumstances to open defendant’s duffel bag since there was no suspicion that he was armed and he was handcuffed and *154 surrounded by five police officers and their dog]; see also, People v Caldwell, 53 NY2d 933 [warrant needed to search closed cassette box within grabbable area because no exigent circumstances present]; compare, People v Smith, 59 NY2d 454 [a more ambiguous situation, distinguished in People v Gokey (supra), upholding a search of arrestee’s briefcase because at time of arrest there was reasonable belief defendant possessed a weapon as evidence by his wearing bulletproof vest, notwithstanding fact that at time of search immediately thereafter defendant was handcuffed and briefcase under police control].)
rv. THE "PLAIN VIEW/PLAIN TOUCH” DOCTRINE
In light of the above analysis that determined the police officers’ touching of the outside of respondent’s bag to be permissible, but not to justify a warrantless search of the interior of the bag as incident to a lawful arrest, the question is presented as to whether there is an alternative constitutionally permissible theory that might uphold the entry into or opening of the bag. In the court’s opinion, there is.
The so-called "plain-view” doctrine is a long-established exception to the warrant requirement: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence”. (Harris v United States, 390 US 234, 236.) The conceptual development of the plain-view doctrine relates to two prominent Federal cases: In Coolidge v New Hampshire (403 US 443) a plurality of the court held that items in plain view may be seized, provided certain conditions are met: First, there must be prior justification for the initial intrusion; second, the discovery must be "inadvertent” and not planned; third, it must be immediately apparent that the item is related to criminal behavior. Subsequently, in Arkansas v Sanders (442 US 753, 764) in a now well-known "footnote 13”, the court stated: "Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to 'plain view’, thereby obviating the need for a warrant” (emphasis added).
The conceptual statements in Coolidge and Sanders (supra) *155 (as distinct from and beyond their specific holdings)[2] have been relied upon to uphold numerous searches and seizures fitting within their parameters. (1 LaFave, Search and Seizure § 2.2 [a]; 3 LaFave, op. cit., § 7.2 [d].)[3] Both the Coolidge and Sanders plain-view doctrines have been judicially recognized in New York State. (See, e.g., People v Belton, supra, at 54;[4] People v Aqudelo, 150 AD2d 284.)[5]
The simplest applications of the "plain-view doctrine”, consistent with Sanders (supra), are situations in which a container may be open, transparent, or otherwise distinctive from the appearance of the container itself. This basic application *156 of "plain view” obviously implicates the sense of sight. The question then logically arises, whether senses other than sight or observation might be considered to be legitimate corollary applications of the plain-view doctrine. The leading commentator in the area of "search and seizure” has answered this question in the affirmative: "Just as what an officer sees where he is lawfully present is a nonsearch plain view, what he learns by reliance upon his other senses while so located is likewise no search and thus per se lawful” (1 LaFave, op. cit., §2.2 [a]). "[Assuming lawful physical contact with the container, this 'plain touch’ may reveal the contents so unquestionably that here as well no warrant requirement exists merely because there is a container between the officer and the seizable object.” (3 LaFave, op. cit., § 7.2 [d].)
The doctrine of "plain touch”, as a corollary of "plain view”, has not been addressed to date in New York State. However, the "plain touch” principle has been recognized as acceptable at the Federal level, by four Circuits: the District of Columbia (United States v Williams, 822 F2d 1174; United States v Russell, 655 F2d 1261, mod 670 F2d 323, cert denied 457 US 1108); the Second Circuit (United States v Ocampo, 650 F2d 421; United States v Diaz, 577 F2d 821); the Fourth Circuit (United States v Norman, 701 F2d 295); and the Ninth Circuit (United States v Portillo, 633 F2d 1313).
United States v Williams (supra) involved an officer who opened a closed paper bag seized pursuant to a Terry stop; the opening was based on the officer’s feel of the outside of the bag which indicated the presence within of controlled substances. A unanimous panel, in upholding the opening of the bag and the seizure of the contraband on a plain touch theory, wrote the most extensive judicial analysis to date of the theoretical and practical underpinnings of the plain touch doctrine. (United States v Williams, 822 F2d, at 1180-1186.) After posing the question of whether "the doctrine recognized in Sanders is applicable if a police officer’s knowledge of the contents of a container derives, not from his sense of sight, but from his sense of touch” (supra, at 1182), and tracing the development of extensive case law derived from Sanders and related cases, the court concluded that "no warrant is needed for an opening of a container whose lawful contents become known through a lawful touching of the outside.” (Supra, at 1184.) The court, however, defined three conditions or limitations inherent in the proper invocation of the plain touch doctrine: First, an officer must be legally authorized to touch *157 the container in the first place, that is, the "vantage point” must be legally and constitutionally permissible. Second, the "touch” is limited to the initial contact with the container, that is, an officer is not free to "continue to manipulate” the container or to rummage around "in an attempt to discern the contents”. (Supra, at 1184.) Third, the lawful touching must convince the officer "to a reasonable certainty” that the container holds contraband or evidence of a crime.
These three conditions are obviously designed to be protective of traditional Fourth Amendment concerns. The third condition is particularly critical and requires further elaboration. It is important to note that the third condition requires more than traditional "probable cause”. Probable cause is a "predictive judgment” as to what further investigation may reveal concerning a container’s contents, and may justify the seizure of the container itself (see, Texas v Brown, supra, at 734, n 2), but in a plain touch situation the "information in 'plain view’ must be good enough to eliminate all need for additional search activity”. (United States v Williams, supra, at 1185.) Accordingly, the information acquired by the officer must "rise * * * to a state of certitude, rather than mere prediction, in regard to the object of the investigation. This level of conviction must be objectively reasonable in light of the officer’s past experience and training, and capable of verification by a reviewing court”. (Supra, at 1185.)
The significance of a "certainty standard” (whether that be termed "reasonable certainty”, as in United States v Williams, supra, or "virtual certainty” as suggested in Texas v Brown, supra, at 734, n 2) is that it circumscribes a limit to an unreasonable expansion of a Fourth Amendment exception based on sensory information. That is, the risk of police error is reduced by this type of strict standard. For example, extensions of the plain-view doctrine to encompass the sense of "plain smell”, an issue that has divided a number of courts in marihuana seizure cases, can be differentiated from "plain touch” cases via a "certainty” test since "tactile information” is easier for a court to evaluate than "fleeting and evanescent” odors, particularly since the former can more readily be preserved for trial (United States v Williams, supra, at 1183, n 105).
In applying the three criteria, above, to the facts of the instant case this court concludes that the requirements for proper application of the plain touch doctrine have been met:
*158 First, as discussed earlier, and based on the credible testimony of the two police officers, Officer Giardina’s initial contact with respondent’s bag, in picking it up to move it off the floor, was legally permissible.[6] Second, Giardina’s initial touch and contact with the bag revealed the weapon. His feel of the gun butt and trigger guard and the rest of the gun was essentially simultaneous and did not involve any improper degree of manipulation or exploration.[7] Third, and most important, Giardina’s touch of the bag made him "certain” (whether that be defined as "reasonably certain” or "virtually certain”) that he felt a weapon.
The fact that Giardina’s credible testimony made it clear that he had the subjective belief, however certain, that he was feeling a weapon is not sufficient. As noted in Williams (supra), the officer’s certitude must be "objectively reasonable” and "capable of verification” by the court. The credible testimony and evidence at this suppression hearing meets this test, as indicated by the following factors: First, the item felt was delineated with specificity, that is, a gun butt and trigger guard and a box-like shape indicative of an automatic weapon (in contrast to, for example, a "bulge” or other vague object).[8] Second, Giardina was highly trained and experienced, with over 16 years’ experience as a police officer, currently in a supervisory capacity. Third, the court could objectively verify the officer’s testimony because respondent’s bag and its contents were introduced in evidence. Moreover, an in-court demonstration was conducted indicating how the bag was picked up off the floor and the way it was opened and its contents removed. The demonstration added to the credibility of the officers’ testimony as it indicated that the bag had a relatively thin cloth exterior, and was packed in such a way that the enclosed clothing and linens further pressed the sizable and weighty handguns against the sides of the bag. Under these circumstances, it was objectively clear to the court that an experienced police officer, touching the outside *159 of this type of bag, could conclude with reasonable or virtual certainty that it contained a weapon.
In sum, because the credible testimony and evidence at this suppression hearing is consistent with a strict application of the criteria underlying the "plain touch” doctrine, the seizure of the weapons and ammunition was proper and therefore the motion to suppress is denied.

. The seven factors were: respondent was traveling alone; she initially lied about her age; she had no identification; she appeared to be nervous; she initially stated her mother could not be called or contacted; she stated that she was waiting for an uncle, but did not have a local address or phone number for that person; and she had been alone in the terminal for three hours.

. Subsequent to the Mapp hearing in this case, the Supreme Court overruled the specific holding in Sanders (supra) in a decision that dealt with the search of containers in relation to the so-called "automobile exception” to the warrant requirement. (See, California v Acevedo, 500 US —, 111 S Ct 1982.) Acevedo, however, did not address and did not affect the continuing viability of Sanders’ delineation of the plain-view concept.

. Although the term "plain view” was utilized in both Coolidge and Sanders (supra), and continues to be utilized with respect to their progeny, the cases refer to two conceptually distinct categories: Coolidge to situations involving a prior search or intrusion into a legally protected area, and then defining items that may be seized without a warrant; Sanders, as descriptive of police observations without there necessarily being a prior legal intrusion, perhaps better termed a "nonsearch plain-view situation”. (See, 1 LaFave, op. cit., § 2.2 [a]; see also, Horton v California, 496 US 128, 133, n 5.) (" 'It is important to distinguish "plain view”, as used in Coolidge to justify seizure of an object, from an officer's mere observation of an item left in plain view. Whereas the latter generally involves no Fourth Amendment search * * * the former generally does implicate the Amendment’s limitations upon seizures of personal property’ ”; Texas v Brown, 460 US 730, 747-751 [concurring opn].)
As noted by LaFave (1 LaFave, op. cit., § 2.2 [a]), use of the term "plain view” to refer to both Coolidge and Sanders (supra) situations has created confusion, particularly in unnecessarily applying the Coolidge criteria to a Sanders situation. However, because some fact patterns may not be readily defined as falling distinctly under one or the other category, and because the criteria employed in analyzing certain fact patterns may be similar regardless of the conceptual category, some of the confusion is understandable.
In this court’s opinion, as discussed further, the instant case more clearly implicates an extension of the Sanders (supra) concept of plain view, specifically the last sentence of its footnote 13.

. Citing both Coolidge and Sanders (supra), as well as noting the distinction between them, and also citing People v Jackson (41 NY2d 146).

. Here, the First Department, in upholding the warrantless opening of distinctively wrapped packages by experienced narcotics officers, cited Sanders and the derivative statement in Robbins v California (453 US 420, 427) that "if the distinctive configuration of a container proclaims its contents, the contents cannot fairly be said to have been removed from a searching officer’s view”.

. Compare People v Torres (74 NY2d 224), in which the officer, under the circumstances, impermissibly reached into a car to retrieve a bag.

. Officer DeFelice’s confirmatory feel of the bag, however, might not be covered by the plain touch doctrine as it did not involve the initial contact with the bag and might be more accurately labeled an exploratory investigation.

. Officer DeFelice’s testimony as to his confirmatory feel of the bag, which he demonstrated with the bag itself in court, and that it revealed in his words "an unmistakable impression of a gun”, further corroborates Giardina’s testimony on this point.