[758 NYS2d 68]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH MYERS, Appellant.

Second Department, March 10, 2003

## APPEARANCES OF COUNSEL

*Andrew C. Fine*, New York City (*Richard Joselson* and *Jennifer Tsai* of counsel), for appellant.

*Charles J. Hynes, District Attorney*, Brooklyn (*Leonard Joblove, Sholom J. Twersky* and *Scott J. Splittgerber* of counsel), for respondent.

## OPINION OF THE COURT

GOLDSTEIN, J.

An issue presented on this appeal is whether, upon a defendant's appeal from his judgment of conviction, we may consider the defendant's legitimate expectation of privacy in determining the validity of a search and seizure if the hearing court did not rule adversely to the defendant on that issue (*see* CPL 470.15 [1]). We hold that if the defendant's legitimate expectation of privacy is an issue in the case, consideration of the issue is unavoidable in reaching a sound legal conclusion, since a defendant's rights against unreasonable searches and seizures is founded upon a personal "privacy interest" (*People v Scott*, 79 NY2d 474, 488 [1992]; *see New York v Class*, 475 US 106 [1986]). Consideration of that issue is a necessary "component" of a suppression ruling adverse to the defendant (*People v Ladson*, 236 AD2d 217 [1997]; *see People v Perez*, 252 AD2d 353 [1998]). Thus, the hearing court's failure to expressly decide the privacy issue does not foreclose our review of that question.

On March 15, 1996, at approximately 1:45 A.M., the police observed the defendant looking into the trunk of an automobile parked at the end of a dead end street while the codefendant, Warren Hamilton, was looking inside the driver's side of the car. As the police approached, the defendant slammed the trunk shut, approached the officers' vehicle and stated "she is dead." One of the officers asked the defendant how he knew the person was dead and the defendant replied "I checked for a pulse." The officers looked in the car and observed the victim slumped down in the passenger's side of the front seat. The de-

fendant was asked why he was looking in the trunk, and replied that he was "being nosey." Since the temperature was about 35 degrees Fahrenheit at the time, one of the officers asked the defendant why he was wearing gloves and no jacket. The defendant replied that he took his jacket off and left it in the car. The car was owned by the decedent.

The police placed the defendant and his codefendant under arrest and called Emergency Medical Service (hereinafter EMS) to aid the victim. The codefendant stated that he and the defendant were "doing" cocaine and decided to go into the parked car to "do more cocaine." A cigarette box was recovered from the defendant's person which contained a clear plastic bag with a white residue later determined to be cocaine. The police observed blood marks on the victim's neck as EMS personnel were examining her. She had been strangled, in all likelihood with one of the seatbelts which had been cut by the codefendant. The seatbelt was recovered from the automobile. Within two hours after the defendant's arrest, the police found the victim's wallet and cocaine in the defendant's jacket, which was recovered from the victim's automobile.

Prior to the trial, the defendant moved, inter alia, to suppress physical evidence and his statements to law enforcement officials. Suppression was properly denied after a hearing.

The hearing court found that the defendant's pre-arrest statements to the police were either spontaneous or in response to investigatory questions. Under the circumstances presented here, a person innocent of any crime would have assumed that he was a witness not in custody (*see People v Centano,* 76 NY2d 837 [1990]; *People v Brown,* 295 AD2d 442 [2002]; *People v Bailey,* 140 AD2d 356 [1988]). Accordingly, the defendant was not subjected to a custodial interrogation without the benefit of *Miranda* warnings (*see Miranda v Arizona,* 384 US 436 [1966]).

The defendant acknowledges on appeal that the police were "plainly entitled" to place him under arrest. The cigarette box containing cocaine was properly seized pursuant to a lawful arrest. The defendant's contention that the interior of the cigarette box should not have been examined without a warrant is unpreserved for appellate review. In any event, the defendant's contention is without merit, since the search was conducted incident to a lawful arrest (*see Matter of Marrhonda G.,* 81 NY2d 942, 945 [1993]; *People v Thompson,* 269 AD2d 317 [2000]; *see also People v Diaz,* 81 NY2d 106 [1993]).

The hearing court further found that "the police were entitled to search the automobile and the jacket therein for contraband

pursuant to the automobile exception to the warrant requirement." In its written decision, it did not rule on the question of whether the defendant had an expectation of privacy in the victim's automobile and the jacket. At the hearing, the People argued that the defendant had no expectation of privacy in the jacket. The defense counsel argued that he had a proprietary interest in the jacket and "[w]e will never know the operation of his mind by leaving it in the car." The court countered that "that car was not his car" but did not rule on the issue of the defendant's legitimate expectation of privacy.

A threshold issue in determining whether physical evidence should be suppressed as the fruit of an illegal search and seizure is whether the defendant has a legitimate expectation of privacy in the place searched or item seized. The defendant bears the burden of establishing a legitimate expectation of privacy (*see People v Ramirez-Portoreal,* 88 NY2d 99, 108 [1996]; *People v Ponder,* 54 NY2d 160, 164 [1981]; *People v Coston,* 270 AD2d 496 [2000]). "Standing to challenge a search is not established by asserting a possessory interest in the goods seized—defendant must assert a privacy interest in the place or item searched" (*People v Ramirez-Portoreal, supra* at 108; *People v Rodriguez,* 69 NY2d 159 [1987]). Further, the defendant must assert a privacy interest which society recognizes as reasonable (*see People v Ramirez-Portoreal, supra* at 108; *People v Funches,* 89 NY2d 1005 [1997]).

In the instant case, the defendant contended that his proprietary interest in his jacket created a reasonable expectation of privacy. On its face, this was an incorrect statement of law (*see People v Ramirez-Portoreal, supra* at 108; *People v Rodriguez, supra*). Further, under any reasonable view of societal norms, it is not reasonable to expect that a jacket and its contents left at the scene of a homicide inside the victim's automobile would remain undisturbed out of respect for the privacy of the person who put it there (*see People v Ramirez-Portoreal, supra; see also People v Walker,* 192 AD2d 734 [1993]; *People v Jaime,* 171 AD2d 884 [1991]; *People v Nelson,* 144 AD2d 714 [1988]).

The defendant contends that consideration of this threshold issue is procedurally barred by CPL 470.15 (1), which provides: "Upon an appeal to an intermediate appellate court from a judgment * * * such intermediate appellate court may consider and determine any question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant." This provision initially was

enacted in 1970 as part of the new Criminal Procedure Law (*see* L 1970, ch 996, § 1). At the time of its enactment, its meaning was described as "self-evident" (*see* Pitler, New York Criminal Practice Under the CPL § 14.38, at 808 [1972], quoting the Staff Comment). The provision limits appellate review in a criminal case to rulings adverse to the appellant (*see People v Goodfriend,* 64 NY2d 695 [1984], *affg* 100 AD2d 781 [1984]). In contrast, the CPLR applicable to civil actions and proceedings permits consideration of "any non-final judgment or order * * * including any which was adverse to the respondent on appeal from the final judgment and which, if reversed, would entitle the respondent to prevail in whole or in part on that appeal" (CPLR 5501 [a] [1]; *see People v Goodfriend, supra* at 698; *Parochial Bus Sys. v Board of Educ.,* 60 NY2d 539, 545-546 [1983]).

In *People v LaFontaine* (92 NY2d 470, 474 [1998]), the Court of Appeals construed CPL 470.15 (1) as a "legislative restriction on the Appellate Division's power to review issues either decided in an appellant's favor, or not ruled upon, by the trial court." The defendant in that case was challenging his arrest in New York by New Jersey police officers and the warrantless search of his apartment. The defendant's reasonable expectation of privacy was not in dispute. The hearing court found that the New Jersey police officers had the authority to act in New York pursuant to a federal arrest warrant. The Appellate Division, First Department, rejected the conclusion that the New Jersey officers were authorized to execute the federal arrest warrant in New York but nevertheless sustained the arrest and search on the ground that the New Jersey police effected an authorized citizen's arrest (*see People v LaFontaine,* 235 AD2d 93 [1997]). The Court of Appeals held that the issue was not properly considered by the Appellate Division "because the Federal arrest warrant issue was the only issue decided *adversely* to defendant" by the hearing court (*People v LaFontaine,* 92 NY2d 470, 474 [1998], *supra* [emphasis in original]). The matter was remitted to the hearing court for further proceedings, which might include "reexamination of the alternative suppression justifications" (*id.* at 475). The Court noted that "the exceptional procedural twist exposed again by the instant case blocks * * * sensible management" of the case, and suggested that the Legislature modify the statutory language (*id.* at 475). To date, the Legislature has not acted.

The instant case does not involve an "exceptional procedural twist" (*id.*). This Court has repeatedly held that the issue of

whether the defendant had a reasonable expectation of privacy may be raised by the People for the first time on appeal (*see People v Guo Yan Zheng,* 266 AD2d 471 [1999]; *People v Andrews,* 216 AD2d 571 [1995]; *People v Vasquez,* 97 AD2d 524 [1983]; *see also People v Hooper,* 245 AD2d 1020 [4th Dept 1997]). Indeed, this Court has held that "[e]ven had the People expressly conceded the issue, it would not be binding on the court" (*People v Vasquez, supra* at 524). Thus that issue may be considered, even if the hearing court ruled adversely to the People or failed to rule at all on the issue, since it is the defendant's burden in the first instance to establish a reasonable expectation of privacy (*see People v Washington,* 287 AD2d 752, 753 [2001]; *People v Jackson,* 207 AD2d 805 [1994]). Unless and until the defendant meets that threshold, the propriety of the police conduct is not an issue and the proprietary of alternative theories justifying the conduct of the police, whether or not determined in the appellant's favor, need not be considered.

Once the threshold is met, the issue of the extent of the defendant's reasonable expectation of privacy is still relevant to the extent of the constitutional protections to which he or she is entitled. The Court of Appeals noted in *People v Scott* (*supra* at 487) that a defendant's rights against unreasonable searches and seizures under the New York Constitution is founded upon a "privacy interest." New York Constitution, article I, § 12 relating to unreasonable searches and seizures protects "the privacy rights of persons, not places" (*People v Scott,* 79 NY2d 474, 488 [1992], *supra*).

The hearing court held that the warrantless search of the defendant's jacket was proper pursuant to the "automobile exception." The automobile exception is predicated on a "*reduced expectation of privacy* associated with automobiles" (*People v Belton,* 55 NY2d 49, 53 [1982] [emphasis supplied]; *Cady v Dombrowski,* 413 US 433, 442 [1973]), based, inter alia, upon the fact that they are operated on public streets, their interiors are highly visible, and they are subject to extensive regulation and inspection (*see People v Belton, supra*).

A search pursuant to the automobile exception may proceed without a warrant, but must be supported by probable cause (*see People v Galak,* 81 NY2d 463, 467 [1993]). Under the New York Constitution, "the police must not only have probable cause to search the vehicle but * * * there must also be a nexus between the arrest and the probable cause to search" (*People v Galak, supra* at 467). The search must be "reasonably

close in time and place to the point of [the] arrest" (*People v Blasich,* 73 NY2d 673, 681 [1989]; *see People v Orlando,* 56 NY2d 441 [1982]; *People v Milerson,* 51 NY2d 919 [1980]). However, the justification for a warrantless search does not dissipate merely because the vehicle is under the control of the police (*see People v Blasich, supra* at 681; *People v Orlando, supra*; *People v Milerson, supra*). Here the search was made at the scene of the arrest within two hours of the crime and while the investigation was ongoing (*see People v Galak, supra* at 468). Therefore, the requisite nexus between the arrest and probable cause to search was established.

The defendant, relying upon *People v Langen* (60 NY2d 170 [1983], *cert denied* 465 US 1028 [1984]), contends that the automobile exception to the warrant requirement did not apply to the contents of his jacket. *People v Langen* (*supra* at 182), relying on *United States v Ross* (456 US 798 [1982]), held that in determining whether it was permissible for the police to search locked containers in an automobile without a warrant, "it is critical that the probable cause * * * related to the automobile and did not focus exclusively on the container" (*People v Langen, supra* at 182). In the instant case, the police had probable cause to search the entire vehicle for drugs and evidence relating to the homicide (*see People v Yancy,* 86 NY2d 239 [1995]; *People v Langen, supra* at 182). Accordingly, the police were free to search the entire vehicle, including compartments and containers (*see People v Langen, supra* at 180; *United States v Ross, supra*; *Chambers v Maroney,* 399 US 42 [1970]).

Subsequent to the decision in *People v Langen* (*supra*), the United States Supreme Court in *California v Acevedo* (500 US 565, 573 [1991]) held that the police are not required to obtain a warrant to open closed containers in an automobile simply because they lack probable cause to search the entire vehicle. The question of whether the principle enunciated in *California v Acevedo* (*supra*) is also valid under the New York Constitution (*see People v Scott, supra* at 485; *People v Goss,* 204 AD2d 984 [1994]) is not before us in this case, since the police in this case had probable cause to search the entire automobile.

The defendant's contention that his rights against unreasonable searches and seizures under the New York Constitution have been violated brings us to a full circle. As the Court of Appeals noted in *People v Scott* (*supra* at 486), in determining such rights under the New York Constitution, one must examine whether the defendant has a legitimate expectation of

privacy in the area or item searched (*see People v Scott, supra* at 486). Since the defendant had no legitimate expectation of privacy in a jacket which he left at the scene of the victim's automobile after strangling her, he was not deprived of any rights under the New York Constitution.

The defendant's remaining contentions are either unpreserved for appellate review or without merit.

Accordingly, the judgment is affirmed.

RITTER, J.P., LUCIANO and SCHMIDT, JJ., concur.

Ordered that the judgment is affirmed.