■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHELLE BELL, Appellant. [780 NYS2d 373]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Latella, J.), rendered October 10, 2002, convicting her of burglary in the second degree (two counts), criminal mischief in the third degree, criminal mischief in the fourth degree, and petit larceny, upon a jury verdict, and convicting her of criminal possession of stolen property in the fifth degree, upon a separate jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (McKay, J.), of that branch of the defendant's omnibus motion which was to suppress certain physical evidence.

Ordered that the judgment is affirmed.

The evidence adduced at the suppression hearing established that the complainant's adult daughter, with whom she lived in a two-family house in Queens, told her that someone had just broken into their house. The daughter pointed to the defendant who was walking away, and the complainant pursued and confronted her. The defendant admitted to the complainant that she broke into the house, allegedly by mistake, but contended that she did not take anything and that the three videocassette recorders she was carrying in a plastic garbage bag did not belong to the complainant. As the defendant walked away, a man in a white van drove up and asked the complainant what happened, at which time the complainant pointed to the defendant and told the man that the defendant had broken into her house.

Some minutes later, Detective Christopher Greene and his partner, who were on duty in uniform in a marked patrol car, were flagged down by a man in a white van. The man in the white van pointed to a black livery van stopped at a light and told the officers that the individual who had just gotten into the van had broken into someone's house. Detective Greene drove past the black livery van and as he cut it off, he observed two persons inside, the driver and a passenger. However, when the detective approached the van on foot, he saw only the driver, who exited the vehicle and repeatedly said, "I have nothing to do with this" and "It's not me."

Detective Greene looked into the side window and saw the defendant lying "straight down on the floor of the van," "wedged in the side of the door" behind the passenger seat. The detective opened the side door and pulled the defendant out. A gold-colored cardboard jewelry box was protruding from her top pocket. A pillowcase and a large plastic bag were on the front seat. A video game with some controllers that looked like "trash or junk" were hanging out of the plastic bag.

Detective Greene placed the defendant on the ground and handcuffed her. Although the complainant was brought to the scene by police and identified the defendant, the identification was not communicated to Detective Greene who transported the defendant, the jewelry box, the contents of the pillowcase, and plastic bag to the precinct.

The hearing court concluded that, because the complainant's on-the-scene identification was not communicated to Detective Greene, he had only reasonable suspicion but not probable cause when he apprehended the defendant. Consequently, the hearing court suppressed the jewelry box retrieved from the defendant's person as the fruit of an unlawful arrest. However, the hearing court denied that branch of the motion which was to suppress the contents of the bag and the pillowcase, reasoning that the defendant failed to demonstrate her standing to challenge the search and seizure of that property.

The defendant challenges the hearing court's determination on the issue of standing. We note that, since the issue of probable cause was decided in the defendant's favor, and consideration of that issue was not a necessary component of the ruling denying suppression, the question of whether there was probable cause for her arrest is not before us (see People v LaFontaine, 92 NY2d 470 [1998]; CPL 470.15 [1]; cf. People v Myers, 303 AD2d 139 [2003]).

To invoke the exclusionary rule, a defendant has the burden of establishing his or her standing by demonstrating a legitimate expectation of privacy in the place or the item searched (see People v Wesley, 73 NY2d 351, 358-359 [1989]; People v Rodriguez, 69 NY2d 159, 163-164 [1987]; People v Myers, supra at 142). A legitimate expectation of privacy exists where the defendant has manifested an expectation of privacy either in the place that was searched or in the item that was searched, and the circumstances are such that the expectation is one that society is prepared to recognize as reasonable (see People v Ramirez-Portoreal, 88 NY2d 99, 108 [1996]). A defendant may establish standing through his or her own evidence or by relying on evidence presented by the prosecution (see People v Gonzalez, 68 NY2d 950, 951 [1986]).

A passenger in a vehicle has a legitimate expectation that his or her travel will not be impeded by unlawful police conduct and therefore has standing to challenge the lawfulness of a stop of the vehicle in which he or she is riding (see People v May, 81 NY2d 725, 727 [1992]; People v Millan, 69 NY2d 514, 520 n 6 [1987]). However, a passenger with no ownership or possessory interest in the vehicle does not have a legitimate expectation of

privacy in its interior (*see Rakas v Illinois,* 439 US 128, 148-149 [1978]). As a result, a passenger, not charged with possession of a weapon or drugs under a statutory presumption (*see People v Millan, supra*), has no standing to challenge the search of the vehicle once it has been lawfully stopped (*see Rakas v Illinois, supra; People v Desir,* 285 AD2d 655 [2001]; *People v Poree,* 240 AD2d 597 [1997]; *People v Fredericks,* 234 AD2d 472, 473 [1996]; *People v Finley,* 145 AD2d 434, 434-435 [1988]). Nevertheless, a passenger may have a legitimate expectation of privacy in a container in his or her possession inside the vehicle (*see People v Bell,* 121 AD2d 455, 456 [1986]), provided that its contents are not exposed to plain view and the nature of the container is not such that its contents can be readily inferred from its outward appearance (*see People v Jones,* 286 AD2d 510 [2001]; *People v Villalvir,* 160 AD2d 627, 629 [1990]; *People v Aqudelo,* 150 AD2d 284, 286 [1989]). Thus, where the contents of a container are not apparent, a passenger who manifests an expectation of privacy in that container has standing to challenge its search and seizure (*see People v Echols,* 157 AD2d 976, 977-978 [1990]; *People v Bell, supra; cf. People v DeLaCruz,* 242 AD2d 410, 412 [1997]).

In the case at bar, the bag and pillowcase containing stolen property were on the front seat of the vehicle while the defendant lay on the floor "to the rear of the front passenger door." The bag and pillowcase were open and, a video game and controllers, looking like "trash or junk," were hanging out of the bag in the officer's plain view. Under these circumstances, there was no showing that the defendant manifested an expectation of privacy in the pillowcase and bag, therefore the hearing court properly determined that the defendant failed to establish her standing to challenge the search and seizure of the two items (*see People v DeLaCruz, supra; People v Jones, supra; People v Miller,* 228 AD2d 979 [1996]; *People v Alvaranga,* 198 AD2d 286, 287 [1993], *affd* 84 NY2d 985 [1994]; *People v McCary,* 173 AD2d 856 [1991]; *cf. Katz v United States,* 389 US 347, 351-352 [1967]; *People v Walker,* 192 AD2d 734 [1993]).

The defendant's remaining contentions either are unpreserved for appellate review or without merit. Florio, J.P., Luciano, Townes and Fisher, JJ., concur.