People v McCullum (2018 NY Slip Op 00570)





People v McCullum


2018 NY Slip Op 00570


Decided on January 31, 2018


Appellate Division, Second Department


Cohen, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 31, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOHN M. LEVENTHAL, J.P.
JEFFREY A. COHEN
SYLVIA O. HINDS-RADIX
FRANCESCA E. CONNOLLY, JJ.


2013-04408
 (Ind. No. 1401/12)

[*1]The People of the State of New York, respondent,
v
Ramee McCullum, appellant.



APPEAL by the defendant from a judgment of the Supreme Court (Michael A. Gary, J.), rendered March 25, 2013, and entered in Kings County, convicting him of criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (John G. Ingram, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.



Paul Skip Laisure, New York, NY (Benjamin S. Litman of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Sholom J. Twersky, and Rebecca L. Visgaitis of counsel), for respondent.



COHEN, J.


OPINION & ORDER
This appeal raises an issue of first impression: whether an occupant of a leasehold, after a warrant of eviction has been issued, retains the protections of the Fourth Amendment to the United States Constitution when a New York City Marshal tenders "legal possession" of the leasehold to a landlord without a physical eviction. We hold that it does not.
It is undisputed that at some point in 2011, the defendant came to live in a bedroom within an apartment leased by Tanzania Mosley, and shared by Mosley's husband, Bobby Taybron, and Mosley's two children. The defendant possessed both a key to the apartment and a separate key to his bedroom.
On January 26, 2012, all of the occupants of the apartment were effectively evicted by the execution of a "legal possession," wherein a New York City Marshal (hereinafter the City Marshal) changed the locks on the apartment, rendering all the occupants "out of possession" of the apartment, yet leaving all their personal property therein.
Later the same day, two police officers on patrol were asked to investigate a claim of trespassing within the apartment. A building security guard provided the responding officers with the notice of eviction, advised them that the eviction had occurred at the apartment earlier that day, and gave the officers the keys to the apartment. However, when the officers attempted to enter the apartment using the keys, pressure from the other side of the door initially prevented the door from opening. Ultimately, the officers determined that a person was inside the apartment pushing on the door to prevent the door from being opened. That person eventually stopped pushing on the door, and the officers opened the door and saw a man, later identified as Taybron, running out the back door of the apartment. The officers chased Taybron and caught him.
After Taybron had been handcuffed, the officers returned to the apartment and conducted a further search to ensure that no one else was trespassing in the apartment. The officers searched all rooms and closets in the apartment.
At a suppression hearing, Officer Caranella testified that he arrived at the lower level of the apartment to find a bedroom with its door open. Officer Caranella entered the bedroom and [*2]observed a clear plastic container with five bullets inside. He also observed a gun cleaning kit on the floor in front of the bed and a black hard plastic case, which he believed to be a gun case based upon his training and experience. When Officer Caranella opened the black hard plastic case, he found four handguns inside. He also found two additional guns on a television stand, one of which was in a clear plastic bag and the other in a blue latex rubber glove, through which the outline of the gun was visible. A seventh gun was found inside a brown box, and an eighth gun was observed next to a lamp. All the items were found in one bedroom.
When the officers asked Taybron about the bedroom, Taybron informed Officer Caranella that it was the defendant's bedroom.
The defendant moved to suppress the eight guns recovered from the bedroom. The People conceded that the defendant had a reasonable expectation of privacy in his bedroom, but that such expectation continued only up until the time of the eviction. When the defendant argued that there was not enough information on the record to establish whether the eviction was legal, the Supreme Court, upon reviewing the eviction-related paperwork, granted the People leave to reopen their case in order to introduce additional evidence regarding the legality of the eviction.
The People called Angela Drew, the rental manager for the housing complex, who testified that the occupants of the subject apartment had been evicted for failure to pay rent. She testified that the New York City Marshal's Office provided the complex with a document entitled "Marshal's Legal Possession," which was signed by the City Marshal and stated that the landlord had legal possession of the premises as of January 26, 2012.
At the close of the hearing, the defendant continued to argue, among other things, that he retained a privacy interest in the bedroom, even after the landlord obtained legal possession, because he was entitled to retrieve any personal belongings that remained inside the apartment. He argued that the People had failed to prove the legality of the eviction since the "Marshal's Legal Possession" notice was not a judge-ordered warrant. The defendant further argued that the search was improper, given the fact that there was no need for Officer Caranella to re-enter the apartment once Taybron had been apprehended and, in any event, any search of the bedroom should have concluded after Officer Caranella saw nothing more than a clear plastic container containing five rounds of ammunition. The defendant noted that five of the eight guns recovered from the bedroom were found in closed, opaque boxes, further undermining any claim that the firearms were in plain view. For all of these, as well as additional reasons, the defendant argued that suppression was required.
The People reiterated their contention with respect to the defendant's lack of a protected privacy interest and further contended that Officer Caranella had a right to be present within the apartment and to search for any additional trespassers following the discovery of Taybron. As the officers had a right to be present in the apartment, they could seize any contraband that was found in plain view.
The Supreme Court denied that branch of the defendant's omnibus motion which was to suppress the guns and ammunition, implicitly finding that the defendant lacked standing to challenge the search and seizure after the legal possession had been effected.
After trial, the jury found the defendant guilty of the single count submitted to it, criminal possession of a weapon in the second degree, based on the defendant's constructive possession of five or more firearms.
The defendant was sentenced, as a second violent felony offender, to a determinate term of imprisonment of eight years, plus five years of postrelease supervision. We affirm.
Analysis
"The Fourth Amendment prohibition against unreasonable searches and seizures is now prevalently understood to protect what an individual may legitimately expect to keep private against unwarranted intrusion by agents of the state" (People v DeProspero, 20 NY3d 527, 531, citing Katz v United States, 389 US 347, 351). "It is, then, ordinarily elemental to the viability of a claim of a Fourth Amendment violation, that its proponent is able to allege a legitimate expectation of privacy in the places or items said to have been illegally searched or seized" (People v DeProspero, 20 NY3d at 531, citing Rakas v Illinois, 439 US 128; see People v Scully, 14 NY3d 861, 864; People v Ramirez-Portoreal, 88 NY2d 99, 108; People v Di Lucchio, 115 AD2d 555, 556). In determining whether an expectation of privacy is reasonable, one must look to " a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society'" (Minnesota v Carter, 525 US 83, 88, [*3]quoting Rakas v Illinois, 439 US at 143 n 12; see People v Hardy, 77 AD3d 133, 138).
To successfully suppress evidence, a defendant must establish standing by demonstrating a legitimate expectation of privacy in the place or item searched. A legitimate expectation of privacy has both objective and subjective components (see People v Reynolds, 71 NY2d 552, 557; People v Rodriguez, 69 NY2d 159, 163). For the subjective component, the defendant must "exhibit an expectation of privacy in the place or item searched, that is, did he [or she] seek to preserve something as private" (People v Ramirez-Portoreal, 88 NY2d at 108, citing Smith v Maryland, 442 US 735, 740). For the objective component, we must consider whether "society generally recognize[s] defendant's expectation of privacy as reasonable, that is, is his [or her] expectation of privacy justifiable under the circumstances" (People v Ramirez-Portoreal, 88 NY2d at 108, citing Smith v Maryland, 442 US at 740-741).
The question on appeal is whether the defendant sufficiently established that he had standing to challenge the search of his bedroom and the seizure of the guns found therein, despite the fact that an eviction had occurred earlier in the day, because the People had failed to establish that the eviction itself was legal. As the defendant's counsel acknowledged at the beginning of the suppression hearing, a defendant seeking suppression of evidence obtained as the result of an alleged illegal search has the burden to prove standing to challenge the search (see People v Hunter, 17 NY3d 725, 726; People v Wesley, 73 NY2d 351, 359).
A defendant may establish standing through his or her own evidence or by relying upon evidence presented by the People (see People v Wesley, 73 NY2d at 358; People v Gonzalez, 68 NY2d 950; People v Bell, 9 AD3d 492). The defendant contends on appeal that he has standing to challenge the search of his bedroom and the seizure of the guns found therein since he had both a subjectively and objectively reasonable expectation of privacy in his bedroom. The defendant averred that he took affirmative steps to safeguard the contents of his bedroom by placing a lock on the door, thereby demonstrating his subjective expectation of privacy, and he slept in that bedroom regularly, thereby establishing the objective reasonableness of that expectation. To the extent that an eviction was executed earlier in the day, he contends that this does not compel a contrary conclusion, because the People failed to establish that the eviction was legal. The defendant argues that, in any event, the City Marshal effectuated only a legal possession of the apartment, wherein the tenant's property is entrusted to the care and control of the landlord, who becomes the tenant's bailee and, thus, the defendant retained a reasonable expectation of privacy in his bedroom.
Here, the landlord commenced and pursued summary nonpayment proceedings against the tenant of the apartment, Tanzania Mosley. Summary proceedings under RPAPL article 7 are expedited, and the statute and the Uniform Rules for Trial Courts (22 NYCRR) chapter II provide, in an attempt to guarantee tenants due process of law, various overlapping layers of notice, starting with the petition, and continuing with notice of the judgment and warrant of eviction (see RPAPL 731, 749[2]; 22 NYCRR 208.37[b]; 208.42[i]). A City Marshal will execute the warrant of eviction, either by a full eviction or by effectuating a "legal possession" (Facey v Johnson, 49 Misc 3d 1136, 1139 [Civ Ct, Kings County]). Chapter IV, Section 6-4 of the New York City Marshals Handbook of Regulations provides that
"the distinction between an eviction and a legal possession is that in an eviction both the tenant and his or her property are removed from the premises, whereas in a legal possession [only] the tenant is removed from the premises and his or her property remains under the care and control of the landlord as bailee for the tenant. Marshals are required to perform whichever service is desired by the landlord and may not restrict themselves to legal possessions."
After a warrant has been executed via a legal possession, the City Marshal provides the landlord with a letter or certificate of repossession (see Regan v Tally Ho Trucking Co., 103 Misc 2d 269, 274 [Civ Ct, Bronx County]; see generally Mayes v UVI Holdings, 280 AD2d 153, 156-157).
In this case, the defendant, to establish his standing, relied on the evidence presented by the People regarding the execution of the warrant of eviction. More particularly he relied upon the "Marshal's Legal Possession" letter, submitted by the People, to argue that its deficiencies—namely, that it was not signed by a judge, it was presented to the landlord after the legal possession had occurred, and it contained no indication that the occupants had been given the requisite 72-hour notice before the legal possession took place—established his standing. However, [*4]while the defendant is correct that the "Marshal's Legal Possession" letter did not establish that the legal possession had been obtained legally, it likewise did not establish that the legal possession had been obtained illegally.
Indeed, the defendant failed to present any evidence establishing that a warrant signed by a judge had not been issued or that the requisite 72-hour notice had not been provided before the legal possession was executed (see RPAPL 731, 749[2]; 22 NYCRR 208.37[b]; 208.42[i]). Thus, the defendant failed to satisfy his burden of establishing that he had standing to challenge the search of his former bedroom and seizure of the guns and ammunition based upon the alleged illegality of the legal possession (see People v Bell, 9 AD3d 492).
Alternatively, the defendant argues that, given the fact that the actions by the City Marshal tendered only legal possession of the apartment to the landlord, while entrusting the apartment occupant's personal property to the care and control of the landlord, the landlord became the apartment occupants' bailee, and during the period of the bailment, the defendant retained a reasonable expectation of privacy in his bedroom and personal possessions. This argument is without merit.
The quantity or quality of interest necessary to assert in order to claim the protection of the Fourth Amendment in a particular location includes, inter alia, the ownership in or right to possession of the premises (see Jeffers v United States, 187 F2d 498, 501 [DC Cir], affd 342 US 48), or the interest of a "lessee or licensee" (United States v De Bousi, 32 F2d 902, 903 [D Mass]). The question of whether the defendant maintained a reasonable expectation of privacy in the bedroom he occupied within the apartment, because the City Marshal executed a legal possession rather than an eviction, as noted above, is a matter of first impression.
In a summary eviction proceeding, after the landlord demonstrates entitlement to a judgment of possession, the court will order that a warrant of eviction be issued, which terminates any existing tenancy and annuls the landlord-tenant relationship by operation of law (see Frey v Rose, 51 AD3d 859, 861; Rocar Realty Northeast, Inc. v Jefferson Val. Mall Ltd. Partnership, 38 AD3d 744, 747). Indeed, Real Property Actions and Proceedings Law § 749(3) provides that the issuance of a warrant for the removal of a tenant "cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant" (see People v Davis, 169 AD2d 16, 19). However, "[t]his court held in People v Stadtmore (52 AD2d 853), that until the moment of actual eviction a tenant retains a reasonable expectation of privacy in the leased premises" (People v Davis, 169 AD2d at 18).
The defendant does not dispute that he would not have had a legitimate expectation of privacy in the bedroom if he had been evicted from the apartment (see People v Garrett, 258 AD2d 530, 530-531; People v Stadtmore, 52 AD2d 853). Instead, he makes a distinction between an eviction and a legal possession. This is a distinction without a difference.
Here, the legal possession gave the landlord the right to possess the apartment and remove the tenants and occupants. Although their belongings remained in the apartment, thereby necessarily creating a bailment, the tenants and occupants no longer had a legal right to possess or control the subject apartment, nor to enter or remain therein. Given that the defendant had no legal right to possess or control the subject apartment after the landlord was given legal possession thereof, any subjective expectation of privacy he manifested in the bedroom which he had occupied in the apartment was not objectively reasonable (see Minnesota v Carter, 525 US at 88; People v Rodriguez, 69 NY2d at 162; People v Russ, 37 NY2d 935, 936; People v Stanley, 50 AD3d 1066). Where, as here, the occupant has been removed from or locked out of the subject premises, the simple fact that his belongings remained thereafter in the premises does not in itself give him an objective expectation of privacy in the premises (see People v Russ, 37 NY2d at 936; People v Garrett, 258 AD2d 530; see generally People v Hardy, 77 AD3d at 138).
As the People argue, the bailment here was created out of necessity. The landlord became the de facto bailee because the tenants' possessions remained in the apartment and the tenants had 30 days in which to retrieve them (see Facey v Johnson, 49 Misc 3d at 1139). The defendant did not request that the landlord take possession of his belongings or hold his possessions for him (cf. Funding Assistance Corp. v Mashreq Bank, 277 AD2d 127, 128). There is no indication that the defendant and the landlord had a relationship of trust, that the defendant was paying the landlord to hold his personal property, or that there was any formalized agreement between the defendant and the landlord that the landlord would keep the defendant's possessions for him (see id. at 128). The landlord did not seek or receive access to the apartment or to the defendant's room prior to the legal possession. Furthermore, the defendant did not have any right to exclude other persons [*5]from access to the apartment after the landlord was given legal possession. Therefore, the defendant lacked standing to challenge the police entry into and search of his bedroom.
Accordingly, the defendant failed to establish that he had a legitimate expectation of privacy in the bedroom that he had occupied after the execution of a legal possession, either on the basis that there was a lack of proof as to the legality of the City Marshal's actions in executing a legal possession of the subject apartment, or that a former occupant maintains a legitimate expectation of privacy after a legal possession has taken place.
Furthermore, after viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 349). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The defendant's remaining contention is without merit.
Accordingly, the judgment is affirmed.
LEVENTHAL, J.P., HINDS-RADIX and CONNOLLY, JJ., concur.
ORDERED that the judgment is affirmed.
ENTER:
Aprilanne Agostino
Clerk of the Court